STATE OF CONNECTICUT *v.* MURRAY COLTON
(14885)

PETERS, C. J., and CALLAHAN, BERDON, NORCOTT and KATZ, Js.

Argued May 31—decision released August 8, 1995

*Kenneth Rosenthal*, with whom was *Bonnie L. Patten*, for the appellant (defendant).

*Jack W. Fischer*, assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *James G. Brown*, assistant state's attorney, for the appellee (state).

CALLAHAN, J. The defendant, Murray Colton, appeals from the judgment of the trial court denying his motion to dismiss, on the ground of double jeopardy, the criminal prosecution pending against him. The defendant has been tried three times for the murder of Patricia Konesky, whose body was found on January 13, 1987, in the dugout of a baseball field in New Haven.[1] See General Statutes §§ 53a-54a and 53a-8.[2] The first two

---

[1] For a full recitation of the facts related to the murder, see *State* v. *Colton*, 227 Conn. 231, 233–35, 630 A.2d 577 (1993).

[2] General Statutes § 53a-54a provides in relevant part: "MURDER. (a) A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person or causes a suicide by force, duress or deception; except that in any prosecution under this subsection, it shall be an affirmative defense that the defendant committed the proscribed act or acts under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be, provided nothing contained in this subsection shall constitute a defense to a prosecution for, or preclude a conviction of, manslaughter in the first degree or any other crime."

General Statutes § 53a-8 provides in relevant part: "CRIMINAL LIABILITY FOR ACTS OF ANOTHER. (a) A person, acting with the mental state required for commission of an offense, who solicits, requests, commands, importunes or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct and may be prosecuted and punished as if he were the principal offender."

trials were conducted in 1989 and 1990 and both resulted in mistrials after the jurors had reported that they were deadlocked. After a third trial, which was conducted in 1991, the defendant was convicted of murder and was sentenced to a fifty year term of imprisonment. On the defendant's appeal from his conviction, we reversed the judgment of the trial court and remanded the case for a new trial, concluding that the trial court had violated the defendant's constitutional right to confrontation by precluding certain evidence showing motive and bias on the part of the state's chief witness, Janice Tourangeau. *State* v. *Colton*, 227 Conn. 231, 233, 630 A.2d 577 (1993).[3]

Subsequently, the state initiated a fourth prosecution of the defendant on the same charge. The defendant moved to dismiss, asserting that: (1) double jeopardy principles bar a fourth trial because of prosecutorial misconduct at the third trial; (2) there is insufficient evidence to proceed to trial because the testimony of the state's chief witness, who is now deceased, is unavailable; (3) a fourth trial would undermine the integrity of the court; and (4) a fourth trial would undermine the interests of justice. After a two day evidentiary hearing, the trial court denied the defendant's motion, reasoning that the claim of prosecutorial misconduct could not be brought in a motion

---

[3] On appeal from his conviction, the defendant also claimed that the trial court had: "(2) improperly permitted an unrepresentative viewing of the crime scene by the jury; (3) abused its discretion by making certain evidentiary rulings; (4) improperly instructed the jury on consciousness of guilt and reasonable doubt; (5) improperly denied the defendant's pretrial motions for discovery and production of exculpatory information regarding the identity of other persons having a motive to harm the victim, and improperly failed to sanction the state for untimely disclosure of such information; and (6) failed to follow proper procedures in denying the defendant's request for access to medical and psychiatric records of the state's chief witness." *State* v. *Colton*, supra, 227 Conn. 233. Because we reversed the judgment of conviction on the basis of the confrontation clause issue, we did not reach those issues.

to dismiss, because the defendant had not alleged prosecutorial misconduct either in a motion for mistrial during the previous trial or on appeal from his conviction at that trial.[4]

The defendant appeals[5] from the trial court's ruling claiming that: (1) the court improperly concluded that his double jeopardy[6] claim on the basis of prosecutorial misconduct was barred as a matter of law; and (2) the trial court improperly prevented him from questioning the prosecutor to support his claim of double jeopardy on the basis of prosecutorial misconduct.[7] We are persuaded by the defendant's first argument. Accordingly, we reverse the judgment of the trial court and remand the case for further proceedings.

I

The defendant first claims that the trial court improperly denied his motion to dismiss his fourth prosecu-

[4] The trial court also held that the testimony of Tourangeau from the third trial could not be used in the fourth trial, although the testimony from the first two trials and from the probable cause hearing could be used. That issue, however, is not a subject of this appeal.

[5] The defendant appeals directly from the judgment of the trial court, pursuant to General Statutes § 51-199 (b). "Colorable claims of double jeopardy are an exception to the general rule that appeals in criminal cases must ordinarily await the final judgment that arises from the imposition of sentence." *State* v. *Boyd*, 221 Conn. 685, 688 n.4, 607 A.2d 376, cert. denied, 506 U.S. 923, 113 S. Ct. 344, 121 L. Ed. 2d 259 (1992).

[6] The double jeopardy clause of the fifth amendment to the United States constitution provides: "[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb." "Although the Connecticut constitution does not include a double jeopardy provision, the due process guarantee of article first, § 9, of our state constitution encompasses protection against double jeopardy." *State* v. *Nixon*, 231 Conn. 545, 550, 651 A.2d 1264 (1995). Because the defendant has not presented a separate analysis of his double jeopardy claim under the state constitution, we confine our analysis to the application of the federal constitution's double jeopardy bar. See, e.g., id., 550 n.4; *State* v. *DePastino*, 228 Conn. 552, 571, 638 A.2d 578 (1994).

[7] The defendant also urged this court to dismiss the state's prosecution of him on the basis of the court's supervisory powers. The defendant withdrew this claim during oral argument. Accordingly, we do not consider it.

tion on double jeopardy grounds on the basis of alleged prosecutorial misconduct at his third trial. Under *Oregon* v. *Kennedy*, 456 U.S. 667, 102 S. Ct. 2083, 72 L. Ed. 2d 416 (1982), and its progeny, the double jeopardy clause will bar the retrial not only of a criminal defendant whose conviction was reversed for evidentiary insufficiency, but also of a defendant whose conviction in the first trial was secured by prosecutorial misconduct.

The defendant's claim concerns the prosecutor's conduct in connection with the testimony of the state's chief witness, Tourangeau. Tourangeau's testimony at the third trial was summarized in *Colton I* as follows. "At trial, Tourangeau gave the following account of her activities on the night of the victim's murder. On the night of January 12, 1987, Tourangeau had been dropped off on Kimberly Avenue [in New Haven] by her friend, Cathleen Jones. Tourangeau was looking for the victim because she wanted the victim to obtain drugs for her. Tourangeau found the victim at Don Phillips Cafe, a bar owned by the defendant's father. The victim agreed to take drugs with Tourangeau, but told Tourangeau that Tourangeau would have to wait because she had something to do first.

"The victim told Tourangeau that she had to meet someone on Kimberly Avenue and, after Tourangeau persisted in asking to go along, the victim agreed that Tourangeau could accompany her as long as she remained unseen. The two separated briefly and were to meet on Kimberly Avenue near Saint Peter's Church. Tourangeau arrived at the church and, shortly thereafter, saw the victim on the corner of Kimberly Avenue and Second Street. Tourangeau approached the victim and asked if she had the drugs yet. The victim responded that she had to go to Saint Peter's Street and reminded Tourangeau to remain out of sight. The victim and Tourangeau took separate routes to Saint

Peter's Street. Tourangeau walked down Kimberly Avenue to a path that led to the baseball field, which was located at the end of Saint Peter's Street. She walked several steps out from the path onto the field when she saw the victim standing with the defendant by a manhole cover. Tourangeau backed up to some bushes at the edge of the field to stay out of sight, and observed the victim and the defendant walk to the third base dugout and sit on the dugout bench. At this point Tourangeau was positioned approximately 190 feet from the third base dugout.

"Tourangeau observed the defendant suddenly stand up and pull the victim by her hair. Tourangeau then saw another man come from the side of the dugout and hit the victim on the side of the head. She described this man as having dark hair and a mustache, wearing tan boots and probably being Hispanic because he had dark skin. On cross-examination Tourangeau testified that when the victim had been struck she had seen something squirt out of the victim's head and had heard a 'squishing sound.' As a result of this blow, the victim was knocked forward facing the ground. Tourangeau then saw both the defendant and the second man kick the victim.

"At this point Tourangeau ran from the area. The second man noticed Tourangeau and yelled after her. Tourangeau kept running and sensed someone running behind her. She ran out onto Kimberly Avenue where she flagged down a car and jumped in. The driver of the car drove Tourangeau to her home. Tourangeau claimed that she then went into the bathroom and lay down in the bathtub until dawn, 'put[ting] it together.'

"Tourangeau did not learn that the victim had been killed until she watched the evening news on television later that day. During both the 6 p.m. and the 11 p.m. news broadcasts reporting the discovery of the victim's

body, Tourangeau stated to her companions, 'That's Patty,' although neither broadcast had mentioned the name of the victim.[8] Tourangeau covered up for knowing the identity of the person on the news by saying that she had recognized the victim's boots. She never told anyone about her presence at the field the night before because she was afraid of retaliation and of being known as a snitch on the street and therefore being unable to get drugs. When Tourangeau was interviewed by the police one week later, she did not mention what she had seen, and provided no information about the murder until March, 1988."[9] *State* v. *Colton*, supra, 227 Conn. 235-37.

"Tourangeau also testified on direct examination that, at the time of the murder, she had been addicted to heroin. She described her lifestyle at that time as a street life in which her principal interests were surviving and getting drugs, and explained that one of the reasons she had not come forward sooner had been the

[8] "When the 6 p.m. news came on, Tourangeau testified that she had been at home with her friend, Cathy Jones, her roommate, Vivian Wiles, and her roommate's friend, Sandy Brown. Tourangeau testified that she had heard a second broadcast later that night at the Tremont Hotel with Jones and two other friends, Jacqueline Boyles and a drug dealer who went by the name of Cowboy." *State* v. *Colton*, supra, 227 Conn. 237 n.3.

[9] "Tourangeau's second statement to the police came about in the following manner. Tourangeau testified that on March 29, 1988, she had been in the Kimberly Avenue neighborhood when she saw the defendant's truck outside of his father's bar. Tourangeau testified that seeing the truck had brought back the memories of the night of the murder that she had been trying to suppress since then. Later that evening, Tourangeau was arrested for prostitution and was taken to the New Haven police station. Officer Paul Welch, who had known Tourangeau since childhood from the neighborhood, was on duty processing incoming prisoners when Tourangeau was brought to the cellblock. Welch testified that, while he was fingerprinting Tourangeau, Tourangeau became very upset and started to cry. She said that she couldn't live with this any longer, and that she had to talk to someone. Welch then turned Tourangeau over to a detective for questioning. Tourangeau then gave a statement regarding what she had seen the night of the murder to then Detective Francisco Ortiz." *State* v. *Colton*, supra, 227 Conn. 237-38 n.4.

difficulty she would have had obtaining drugs if she had become known as a snitch. Tourangeau testified that prostitution was how she had made money at that time, and that she would spend all of her earnings on drugs. Tourangeau further testified that at the present time she was no longer addicted to drugs or engaged in prostitution. She stated that she had managed to overcome her addiction while in jail in 1989.

"When questioned about her desire for the reward money,[10] Tourangeau testified that when she had first come forward she had had no interest in the reward. She maintained, both in her statement to the police and at trial, that the sole motivating factor in deciding to reveal what she had seen was the emotional anguish she experienced from 'keeping it in.' She also testified that she had become interested in the reward only as 'soon as my life started to change.' When asked to describe this change, Tourangeau testified: 'I've gained part of a family back. I'm not a drug user. I need a new life. . . . I need to start my family and myself on a new life.' " Id., 239–40.

In his motion to dismiss the fourth prosecution on the ground of double jeopardy, the defendant claimed that "the prosecutor at the third trial deliberately planned and elicited repeated testimony to the effect that Tourangeau had supposedly ceased all involvement in her prior lifestyle as a drug addict, prostitute and street hustler, and was now motivated solely by a new, normal way of life, and was therefore completely freed from the dominating needs . . . characteristic of her past life. See State v. Colton, [supra, 227 Conn. 239–42, 250–52 n.20]."

---

[10] "On February 5, 1988, the state posted notices in the Kimberly Square neighborhood offering a $20,000 reward for information leading to the arrest and conviction of the person or persons responsible for the victim's murder. . . . Shortly [after the defendant's conviction], Tourangeau collected $14,000 from the state, which represented her share of the reward." State v. Colton, supra, 227 Conn. 234–35.

The defendant proffered several documents, some of which are sealed, in support of his claim of prosecutorial misconduct. These documents include police reports from both New Haven and Milford, which, the defendant alleges, indicate that Tourangeau continued her prior lifestyle even after 1989, the time that she claimed to have overcome her drug addiction and ceased to engage in prostitution. The gravamen of the defendant's claim is that although the prosecutor properly provided the defense attorney copies of all of the police reports at the time of trial, the prosecutor also should have investigated these and other reports further and, by failing to do so, may have suborned perjury. The defendant claims that this alleged prosecutorial misconduct rises to the level of a double jeopardy violation, because "[f]ully aware of this record, and the substantial indication of prevarication, manipulation and perjury it established, the prosecutor intentionally closed his eyes to all of it, deliberately avoided obvious avenues of investigation readily accessible to the State, and failed to pursue or present evidence that could have damaged his case or aided the defendant, in violation of ethical and constitutional obligations of which the prosecutor was similarly fully aware."[11]

Ordinarily, "the Double Jeopardy Clause imposes no limitation upon the power of the government to retry a defendant who has succeeded in persuading a court

[11] "It is well established . . . that a state's attorney has a duty, not solely to obtain convictions, but to ensure that all evidence tending to aid in the ascertaining of the truth be laid before the court, whether it be consistent with the contention of the prosecution that the accused is guilty. . . ." (Citation omitted; internal quotation marks omitted.) *State* v. *Hammond*, 221 Conn. 264, 292, 604 A.2d 793 (1992). From this duty it necessarily follows that a state's attorney has the obligation to investigate fully the veracity of a witness' potential testimony in order to determine if that witness should testify. Id. ("[i]t is unprofessional conduct for a prosecutor intentionally to avoid pursuit of evidence because . . . it will damage the prosecution's case or aid the accused").

to set his conviction aside, unless the conviction has been reversed because of insufficiency of the evidence." *Oregon* v. *Kennedy*, supra, 456 U.S. 676 n.6. In *Kennedy*, however, the United States Supreme Court held that double jeopardy also bars a subsequent prosecution if there was prosecutorial misconduct in the first trial that goaded the defendant into seeking a mistrial. "Only where the governmental conduct in question is intended to 'goad' the defendant into moving for a mistrial may a defendant raise the bar of double jeopardy to a second trial after having succeeded in aborting the first on his own motion." Id., 676.

The United States Court of Appeals for the Second Circuit recently held, however, that prosecutorial misconduct may be a bar to a second trial even if there was no mistrial in the first case. In *United States* v. *Wallach*, 935 F.2d 445 (2d Cir. 1991) (*Wallach I*), the court reversed the defendants' convictions and ordered new trials because the government's chief witness had perjured himself by testifying that he had stopped his compulsive gambling in the summer of 1988. In fact, the witness had continued to gamble at the time of trial in the summer of 1989. Id., 455. In reversing the defendants' convictions, the court stated: "In light of [the witness'] acknowledged history of compulsive gambling, we believe that given the inconsistencies in his statements the government should have been on notice that [the witness] was perjuring himself. Yet, instead of proceeding with great caution, the government set out on its redirect examination to rehabilitate [the witness] and elicited his rather dubious explanation of what had happened. . . . We fear that given the importance of [his] testimony to the case, the prosecutors may have consciously avoided recognizing the obvious—that is, that [the witness] was not telling the truth. . . . Accordingly, because we are convinced that the government should have known that [the witness] was com-

mitting perjury, all the convictions must be reversed."
Id., 457.[12]

After the government reinstituted charges against
the named defendant in *Wallach I,* he moved to dis-
miss, claiming that double jeopardy barred a retrial in
the aftermath of the reversal of his conviction "on the
ground that the prosecution should have known that
a government witness's trial testimony was false."
*United States* v. *Wallach,* 979 F.2d 912, 913 (2d Cir.
1992) *(Wallach II),* cert. denied, 508 U.S. 939, 113 S.
Ct. 2414, 124 L. Ed. 2d 637 (1993). The court in *Wal-
lach II* held that "[i]f any extension of *Kennedy* beyond
the mistrial context is warranted, it would be a bar to
retrial only where the misconduct of the prosecutor is
undertaken, not simply to prevent an acquittal, but to
prevent an acquittal that the prosecutor believed at the
time was likely to occur in the absence of his miscon-
duct. . . . Indeed, if *Kennedy* is not extended to this
limited degree, a prosecutor apprehending an acquit-
tal encounters the jeopardy bar to retrial when he
engages in misconduct of sufficient visibility to pre-
cipitate a mistrial motion, but not when he fends off
the anticipated acquittal by misconduct of which the
defendant is unaware until after the verdict. There is
no justification for that distinction." Id., 916.

Despite extension of the double jeopardy doctrine in
*Wallach I* to include a situation in which the prosecu-
tors " 'should have known' " of and " 'may have con-
sciously avoided recognizing' " the witness' perjury,
the court in *Wallach II* concluded that "the factual
predicate for extending *Kennedy* to bar [the defend-
ant's] retrial—deliberate prosecutorial misconduct
undertaken to avoid an acquittal that the prosecutors

---

[12] Indeed, the witness subsequently was convicted of committing perjury
relating to his testimony in the trial of the defendants in *Wallach I. Wal-
lach I,* supra, 935 F.2d 455.

believed was likely in the absence of their misconduct—is totally lacking." Id., 917. The court based this conclusion on its determination that the evidence of the defendant's guilt was so overwhelming that "it is entirely unrealistic to think that the prosecution . . . apprehended an acquittal." Id., 916. Additionally, the court stated that "in denying the defendant's motion for a new trial . . . [the trial court] expressly found that there was no evidence that the prosecution had any knowledge of the perjury" and that "[t]he prosecutors certainly did not malevolently elicit [the witness'] initial contention that he had ceased gambling." Id., 917.

The Second Circuit Court of Appeals more recently has affirmed the extension of *Kennedy*, stating "that the Double Jeopardy Clause protects a criminal defendant from multiple successive prosecutions for the same offense that arise from prosecutorial overreaching engaged in with the deliberate intent of depriving him of having his trial completed by a particular tribunal or prejudicing the possibility of an acquittal that the prosecutor believed likely." *United States* v. *Pavloyianis*, 996 F.2d 1467, 1473 (2d Cir. 1993). In *Pavloyianis*, the Court of Appeals affirmed the District Court's denial of the defendant's motion to dismiss a subsequent prosecution on double jeopardy grounds. The District Court had determined that an evidentiary hearing would serve no purpose because, in light of the overwhelming evidence of the defendant's guilt, any misconduct was not deliberately engaged in to avoid the possibility of a likely acquittal. The Court of Appeals affirmed, concluding that "[n]o rule of law requires a hearing in this sort of case *where the relevant facts can be ascertained from the record.*" (Emphasis added.) Id., 1475.

In the present case, the trial court asserted that the court in *Wallach II* "concluded that in the narrow cir-

cumstances of a *reversal based on prosecutorial misconduct*, the double jeopardy clause may bar a retrial." (Emphasis added.) It went on to state, however, that "[i]n the present case, the defendant's conviction was reversed solely on the ground that the trial [court] improperly excluded evidence that would have contradicted the testimony of a key witness." (Emphasis added.) The trial court concluded, therefore, that it need not consider the merits of the defendant's double jeopardy claim. We disagree with the trial court's reading of *Wallach I* to bar categorically a claim of double jeopardy unless the defendant's previous conviction had been set aside or reversed because of prosecutorial misconduct.

It is important to note that the court in *Wallach II* considered the defendant's claim of double jeopardy on the basis of prosecutorial misconduct on the merits, even though it ultimately concluded that, as a factual matter, there was no intent on the part of the prosecutor to engage in misconduct in order to avoid a likely acquittal. The reason for the reversal in *Wallach I* was that the testimony of the government's chief witness was perjured. While the court concluded that the prosecutors should have known of the perjury, that conclusion was not the sole basis of its holding. Rather, the holding of *Wallach I* was that the convictions had to be overturned, with or without prosecutorial misconduct, because the witness "was the centerpiece of the government's case" and had the jury known that the witness was not telling the truth about his gambling, "his entire testimony may have been rejected by the jury." *Wallach I*, supra, 935 F.2d 457. Prosecutorial misconduct, therefore, was not the principal reason for the reversal. Indeed, in considering the defendant's claim of double jeopardy on the basis of prosecutorial misconduct the court in *Wallach II* noted that "[t]here was no determination that the prosecutors [in *Wal-*

*lach I]* had actual knowledge [of the perjury]" and, on that basis, concluded that there was no intent on the part of the prosecutor to engage in misconduct to avoid a likely acquittal, and, therefore, there was no double jeopardy bar to a second prosecution. *Wallach II*, supra, 979 F.2d 917.

The question of whether a claim of double jeopardy on the basis of prosecutorial misconduct can be raised in a motion to dismiss in the absence of a previous mistrial or reversal because of prosecutorial misconduct is one of first impression in Connecticut. While we acknowledge that there is a split among the Circuit Courts on this issue,[13] we agree with the Second Circuit Court of Appeals that *Kennedy* logically should be extended to bar a new trial, even in the absence of a mistrial or reversal because of prosecutorial misconduct, if the prosecutor in the first trial engaged in misconduct with the intent "to prevent an acquittal that the prosecutor believed at the time was likely to occur in the absence of his misconduct." *Wallach II*, supra, 979 F.2d 916.

The reasoning for expanding the *Kennedy* doctrine in this limited circumstance is particularly compelling in a case such as the present one, in which some of the evidence that the defendant intended to use to demonstrate prosecutorial misconduct was not part of the record on appeal from the previous trial. Some evidence was part of the record, such as the transcript of the prosecutor's closing statement to the jury, in which he vouched for the truth of Tourangeau's testimony knowing that the veracity of her statements was at least questionable. Other evidence, however, was not in the record, such as the question of whether, at the time

---

[13] Cf. *Beringer* v. *Sheahan*, 934 F.2d 110 (7th Cir.), cert. denied, 502 U.S. 1006, 112 S. Ct. 641, 116 L. Ed. 2d 658 (1991) (motion for mistrial necessary prerequisite to claim of double jeopardy on basis of prosecutorial misconduct).

of trial, the prosecutor had actual or constructive knowledge of the inaccuracy of Tourangeau's statements regarding her allegedly changed lifestyle and her reasons for testifying. In order to have a fair opportunity to meet his difficult burden of proving that the prosecutor had engaged in misconduct with the intent to avoid an acquittal that was likely, the defendant must be able to bring that alleged misconduct to the attention of the court. With regard to off-the-record conduct, the proper time to do so is in a collateral evidentiary proceeding.[14]

The reasoning behind the procedure for bringing a claim of ineffective assistance of counsel in a petition for a writ of habeas corpus is equally applicable to the issue before us. "This court has emphasized in other cases that a claim of ineffective assistance of counsel is more properly pursued on a petition for new trial or on a petition for a writ of habeas corpus rather than on direct appeal. *State* v. *Just,* [185 Conn. 339, 370–71, 441 A.2d 98 (1981)]; *State* v. *Barber,* [173 Conn. 153, 154–55, 376 A.2d 1108 (1977)]. *Absent the evidentiary hearing available in the collateral action, review in this court of the ineffective assistance claim is at best difficult and sometimes impossible.* The evidentiary hearing provides the trial court with the evidence which is often necessary to evaluate the competency of the defense and the harmfulness of any incompetency." (Emphasis added.) *State* v. *Mason,* 186 Conn. 574,

---

[14] What the prosecutor did or failed to do to affect the trial is the only relevant inquiry in a claim of double jeopardy on the basis of prosecutorial misconduct. For instance, the defendant proffered a newspaper clipping that was published after Tourangeau's death in which her son claimed that she had consumed drugs and engaged in prostitution until the time of her death. The contents of this article could not have been the basis of prosecutorial misconduct at the time of trial. The article may be evidence, however, that others knew of Tourangeau's drug addiction after she claimed to have overcome her addiction, and that the prosecutor may have failed to investigate fully Tourangeau's account of events.

578–79, 442 A.2d 1335 (1982); see *State* v. *Tirado*, 194 Conn. 89, 92, 478 A.2d 606 (1984) (refusing to reach claim of ineffective assistance of counsel because of insufficient record, but not barring collateral proceeding to establish record).

In the present case, during the evidentiary hearing on his motion to dismiss on the ground of double jeopardy, the defendant attempted to present evidence of prosecutorial misconduct that allegedly had occurred both on and off-the-record. The trial court, however, did not consider the factual allegations of prosecutorial misconduct. Rather, it denied the defendant's motion to dismiss on the basis of a perceived procedural defect. The trial court concluded, as a matter of law, that the defendant could not, in a collateral proceeding, bring a claim of double jeopardy because of alleged prosecutorial misconduct without having first raised a claim of prosecutorial misconduct at some previous time. In the absence of a record of the alleged misconduct that had occurred off-the-record, however, a claim of prosecutorial misconduct at a previous time would have been futile. To the extent that misconduct allegedly has occurred off-the-record, a defendant must have an opportunity to make a record in some fashion.

We can see no principled justification for a distinction between prosecutorial misconduct that is clandestine, and therefore not discoverable until after a verdict or an appeal, and prosecutorial misconduct that is visible, and so can be remedied by a motion for mistrial or on direct appeal. See *Wallach II*, supra, 979 F.2d 916. We do not mean to suggest that every reversal of a criminal case on appeal in which the charges are reinstituted would thereafter give rise to a valid claim of double jeopardy on the basis of alleged prosecutorial misconduct.[15] Indeed, we anticipate that this claim

---

[15] The defendant claims, in part, that the prosecutor's objections at trial on evidentiary matters constituted prosecutorial misconduct. Raising a good

would arise only rarely. This is such a case. Here, the defendant's conviction was reversed and a new trial ordered because the court had inhibited the scope of the defendant's cross-examination of a state witness, without whose testimony the state conceded there would be insufficient evidence to satisfy even probable cause, and the defendant claimed prosecutorial misconduct relating to the testimony of that witness, the alleged evidence of which was acquired, at least in part, after the verdict and possibly after the appeal. Analogous circumstances should arise infrequently and should not invite a plethora of comparable claims.[16] Ordinarily, "the Double Jeopardy safeguard does not prevent retrial of a defendant who obtained a reversal of his conviction because of an error or defect in the criminal proceedings leading to conviction. See *United States* v. *Ball*, 163 U.S. 662, 672, 16 S. Ct. 1192, 41 L. Ed. 300 (1896)." *United States* v. *Pavloyianis*, supra, 996 F.2d 1473.

Moreover, the defendant's burden is a heavy one. To avail himself of the "constitutional bulwark [of double

faith objection in the trial court, however, is obviously not itself prosecutorial misconduct. In this case, the trial court ruled on the objections raised by the prosecutor and, as a result of that ruling, limited the scope of the defendant's cross-examination of Tourangeau. We subsequently reversed the trial court's ruling, concluding that it violated the defendant's right to confront the state's chief witness, without whom the state's case would fail. Although the rulings were improper, the prosecutor's good faith objections cannot be the basis of the defendant's claim of prosecutorial misconduct.

[16] Indeed, if a claim of prosecutorial misconduct is derived solely from the record, the defendant may waive the claim by his failure to raise it as a motion for mistrial. "[W]here counsel does not request a curative charge or seek a mistrial on the basis of alleged prosecutorial misconduct, we have presumed that defense counsel did not view the remarks as so prejudicial that his client's right to a fair trial was seriously jeopardized. . . . As a result, we find that the defendants have waived their right to raise on appeal this claim of prosecutorial abuse." (Internal quotation marks omitted.) *State* v. *Tyler-Barcomb*, 197 Conn. 666, 673–74, 500 A.2d 1324 (1985), cert. denied, 475 U.S. 1109, 106 S. Ct. 1518, 89 L. Ed. 2d 916 (1986).

jeopardy]," the defendant must prove that the alleged prosecutorial misconduct "ha[d] been undertaken with the deliberate purpose of depriving the defendant of double jeopardy's shield, that is to say, only a high-handed wrong intentionally directed against [the] defendant's constitutional right will trigger his right not to be twice put in jeopardy for the same offense." Id., 1469. Furthermore, the defendant must prove that "the misconduct of the prosecutor is undertaken not simply to prevent an acquittal, but to prevent an acquittal that the prosecutor believed at the time was likely to occur in the absence of his misconduct." *Wallach II*, supra, 979 F.2d 916.

In this case, nevertheless, we conclude that the defendant should have been allowed the opportunity to create a record of the alleged prosecutorial misconduct in an attempt to carry his burden to prove a double jeopardy violation on the basis of prosecutorial misconduct in his third trial. The case, therefore, must be remanded to the trial court to consider the defendant's motion to dismiss on the merits.

II

The defendant next claims that the trial court improperly prevented him from calling the prosecutor at the third trial as a witness to support his claim of double jeopardy on the basis of prosecutorial misconduct. We address this claim because this issue possibly will recur on remand in the consideration of the merits of the defendant's motion to dismiss.

We recently have considered the standard that governs whether a prosecuting attorney or defense attorney can be called as a witness relating to a case in which he had participated as an advocate. "At the outset, we note that courts have been reluctant to allow attorneys to be called as witnesses in trials in which they are advocates. See *Rudolph* v. *State*, 829 P.2d 269, 273 (Wyo. 1992); see also *United States* v. *Birdman*,

602 F.2d 547, 553 (3d Cir. 1979), cert. denied, 444 U.S. 1032, 100 S. Ct. 703, 62 L. Ed. 2d 668 (1980). When either party in a criminal case seeks testimony from the prosecuting attorney, the federal courts have applied a compelling need test. See *United States* v. *Prantil*, 764 F.2d 548, 554 (9th Cir. 1985); *United States* v. *Dack*, 747 F.2d 1172, 1176 n.5 (7th Cir. 1984); *United States* v. *Birdman*, supra, 553; *United States* v. *Schwartzbaum*, 527 F.2d 249, 253 (2d Cir. 1975), cert. denied, 424 U.S. 942, 96 S. Ct. 1410, 47 L. Ed. 2d 348 (1976). Under this test, the party wishing to call a prosecutor to testify must show that the testimony of the prosecutor is necessary and not merely relevant, and that all other available sources of comparably probative evidence have been exhausted. *State* v. *Thompson*, 20 Conn. App. 290, 297, 567 A.2d 837 (1989); see also *United States* v. *Prantil*, supra, 551; *Rudolph* v. *State*, supra, 273.

"The policy behind the compelling need test in the context of requiring a prosecutor to testify is four fold: First, there is the risk that the prosecutor may not be a fully objective witness. [*United States* v. *Birdman*, supra, 602 F.2d 553]. Second, there exists the justifiable fear that, when a prosecutor takes the witness stand, the prestige or prominence of the prosecutor's office will artificially enhance his credibility as a witness. *United States* v. *Johnston*, 690 F.2d 638, 643 (7th Cir. 1982). Third, the jury may understandably be confused by the prosecutor's dual role. Id. . . . Finally, a broader concern for public confidence in the administration of justice suggests the maxim that justice must satisfy the appearance of justice. (Citation omitted.) *State* v. *Thompson*, supra, 20 Conn. App. 296; *United States* v. *Birdman*, supra, 554." (Internal quotation marks omitted.) *Ullmann* v. *State*, 230 Conn. 698, 716–17, 647 A.2d 324 (1994).[17]

---

[17] These policy considerations were developed in the context of a jury trial. In the circumstance of a motion to dismiss before a court, the third

In adopting the compelling need test in *Ullmann*, we noted that "[t]he trial court is charged with making the determination of the materiality of the witness' testimony and must, of course, honor the defendant's constitutional rights of confrontation and compulsory process. *United States* v. *Prantil*, supra, [764 F.2d] 552. *State* v. *Thompson*, supra, 20 Conn. App. 297. [T]he vast weight of authority indicates that any decision whether or not to allow an attorney to be called is *left to the discretion of the trial judge*. Therefore, in reviewing [the] appellant's claims we will only reverse the decision of the trial court if there was an abuse of discretion. *Rudolph* v. *State*, supra, 829 P.2d 272; see also *State* v. *Williams*, 656 P.2d 450, 453 (Utah 1982). The issue, therefore, is not whether we would reach the same conclusion in the exercise of our own judgment, but only whether the trial court acted reasonably. *State* v. *Deleon*, 230 Conn. 351, 363, 645 A.2d 518 (1994); see also *State* v. *S & R Sanitation Services*, 202 Conn. 300, 311–12, 521 A.2d 1017 (1987)." (Emphasis added; internal quotation marks omitted.) *Ullmann* v. *State*, supra, 230 Conn. 721.

Because the trial court concluded in its articulation that, as a matter of law, the defendant did not have a valid double jeopardy claim, because his claim of prosecutorial misconduct had not been raised previously in a motion for mistrial or on direct appeal, it never exercised its discretion to determine whether the prosecutor should be compelled to testify in connection with the defendant's motion to dismiss. The trial court, by concluding, as a matter of law, that the defendant had no basis for his claim of double jeopardy, did not reach

policy consideration obviously would be inapplicable. The other stated policy considerations for the compelling need test, however, remain viable. Moreover, the requirement of a threshold showing of compelling need is necessary to prevent frivolous attempts to call prosecutors or defense counsel as witnesses.

the factual allegations made by the defendant that the court would have to consider in order for it to have exercised its discretion to determine whether there was a compelling need for the prosecutor to testify.

" 'While it is normally true that this court will refrain from interfering with a trial court's exercise of discretion . . . this presupposes that the trial court did in fact *exercise* its discretion. [D]iscretion imports something more than leeway in decision-making. . . . It means a legal discretion, to be *exercised* in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice.' (Citations omitted; internal quotation marks omitted.) *State* v. *Martin*, 201 Conn. 74, 88, 513 A.2d 116 (1986)." (Emphasis added.) *Gateway Co.* v. *DiNoia*, 232 Conn. 223, 239, 653 A.2d 342 (1995).

Because in this instance the trial court did not exercise its discretion to determine whether the defendant had made a factual, prima facie showing of prosecutorial misconduct so as to create a compelling need for the prosecutor's testimony, it must do so on remand. We conclude that "[w]here, as here, the trial court is properly called upon to exercise its discretion, its failure to do so is [improper]." *State* v. *Martin*, supra, 201 Conn. 88. The trial court, therefore, on remand must determine whether the defendant has made a prima facie showing of prosecutorial misconduct, and, if so, it must determine whether there is a compelling need for the testimony of the prosecutor in connection with the defendant's claim that the prosecutor had engaged in misconduct with the intent to avoid an acquittal that the prosecutor believed was likely. See *Wallach II*, supra, 979 F.2d 916.

The judgment of the trial court is reversed, and the case is remanded to that court to consider the defendant's motion to dismiss on the merits.

In this opinion the other justices concurred.