# STATE OF CONNECTICUT *v.* MICHAEL B. ROSS
## (SC 16124)
## (SC 16135)

Norcott, Sullivan, Peters, Callahan and Schaller, Js.

Argued October 14—officially released December 14, 1999

*Kenneth Rosenthal*, special public defender, and *Mark Rademacher*, assistant public defender, with whom, on the brief, were *Karen Goodrow* and *Barry*

*Butler*, assistant public defenders, for the appellant in Docket No. 16124, appellee in Docket No. 16135 (defendant).

*Michael E. O'Hare*, assistant state's attorney, and *Timothy J. Sugrue*, senior assistant state's attorney, with whom were *Kevin T. Kane*, state's attorney, and, on the brief, *Susan C. Marks*, supervisory assistant state's attorney, for the appellee in Docket No. 16124, appellant in Docket No. 16135 (state).

*Opinion*

PETERS, J. In *State* v. *Ross*, 230 Conn. 183, 286, 646 A.2d 1318 (1994), cert. denied, 513 U.S. 1165, 115 S. Ct. 1133, 130 L. Ed. 2d 1095 (1995), this court held that, as a result of an improper evidentiary ruling, the defendant, Michael B. Ross, was entitled to a new penalty hearing to determine whether the state was entitled to exact the ultimate penalty of death. The present appeal raises two issues. The first issue is a question of statutory construction relating to General Statutes § 53a-46a (c).[1]

---

[1] General Statutes § 53a-46a (c) provides: "In such hearing the court shall disclose to the defendant or his counsel all material contained in any presentence report which may have been prepared. No presentence information withheld from the defendant shall be considered in determining the existence of any mitigating or aggravating factor. Any information relevant to any mitigating factor may be presented by either the state or the defendant, regardless of its admissibility under the rules governing admission of evidence in trials of criminal matters, but the admissibility of information relevant to any of the aggravating factors set forth in subsection (i) shall be governed by the rules governing the admission of evidence in such trials. The state and the defendant shall be permitted to rebut any information received at the hearing and shall be given fair opportunity to present argument as to the adequacy of the information to establish the existence of any mitigating or aggravating factor. The burden of establishing any of the aggravating factors set forth in subsection (i) shall be on the state. The burden of establishing any mitigating factor shall be on the defendant." We recognize that, for purposes of this appeal, the statute applicable to the defendant's trial was General Statutes (Rev. to 1983) § 53a-46a. For the sake of uniformity and clarity, however, our references are to the statute as it is currently codified. Unless otherwise noted, there have been no substantive changes in the applicable text of the statute since its 1983 codification.

That issue is whether, despite the unambiguous language of the statute, the state is bound by the ordinary rules of evidence in its rebuttal of the defendant's claim of mitigation. The second issue is a question of constitutional law that turns on the resolution of a question of fact: did the state, in violation of *Brady* v. *Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), suppress exculpatory information at the time of the defendant's original trial so that the defendant is now entitled either to a new guilt phase trial or to the preclusion of a second penalty phase trial. We decide both issues in favor of the state,[2] and accordingly direct that proceedings for a second penalty phase hearing go forward forthwith.

The facts underlying this appeal were fully recited in our earlier opinion. *State* v. *Ross*, supra, 230 Conn. 191–92. At his trial, the defendant did not deny that, in violation of General Statutes § 53a-54b (5) and (7), he had sexually assaulted, kidnapped and murdered four teenaged girls in eastern Connecticut in 1983 and 1984. Id., 192. His defense was insanity, a defense that the jury rejected by returning a verdict of guilty of six counts of capital felony. Id. We affirmed the defendant's convictions in their entirety. Id., 228–29, 286. Nonetheless, we held that the defendant was entitled to a new penalty phase hearing because the trial court improperly had deprived him of the opportunity to present evidence of mitigating circumstances arising out of his alleged mental illness. Id., 286.

The evidence that had been at issue in the penalty phase hearing was twofold. "[T]he trial court [*Ford, J.*] precluded the defendant from submitting to the jury:

---

[2] We have jurisdiction to consider the merits of these appeals at this juncture because the state, in conjunction with its appeal, requested and obtained certification from the chief justice pursuant to General Statutes § 52-265a. Thereafter, this court consolidated the state's appeal with the defendant's appeal.

(a) a letter written by Robert Miller, a court appointed psychiatric expert who had evaluated the defendant for the state, which reflected the fact that [Miller] had changed his position about the mitigating role of the defendant's psychopathology; and (b) a report by Miller, which reflected his corroboration of the diagnosis of the defendant contained in the reports of defense psychiatric experts." Id., 267.

We concluded in *State* v. *Ross*, supra, 230 Conn. 268, that § 53a-46a (c) permitted the defendant to introduce this evidence even though, under other circumstances, it might have been excludable as hearsay. "The statute plainly provides that, in a penalty hearing conducted pursuant to § 53a-46a, *'[a]ny information relevant* to any mitigating factor may be presented by either the state or the defendant, *regardless* of its admissibility under the rules governing admission of evidence in trials of criminal matters . . . .' (Emphasis added.) On its face, this language authorizes a judge presiding over a penalty hearing to exclude mitigating evidence *only* on the basis of a lack of relevancy." (Emphasis in original.) Id. We concluded that these documents had been excluded improperly because they were relevant to the defendant's claim of the existence of mitigating factors that could counsel against the imposition of the death penalty. Id., 271. We therefore remanded the case for a new penalty phase hearing. Id., 273.

For reasons that the record does not fully disclose, the parties returned only recently to the trial court to prepare for the new penalty phase hearing that we had ordered in 1994. In the course of that preparation, the defendant filed the motions that are currently at issue.

The defendant filed a motion in limine to restrict the state to the normal rules of evidence with respect to any evidence that the state might offer to rebut mitigation. The trial court, *Miano, J.*, granted the defendant's

motion. It concluded that the defendant's constitutional right to due process required a construction of § 53a-46a (c) that would afford the defendant the broadest possible latitude to establish mitigation. On this ground, the court ruled that any evidence presented by the state to rebut mitigation at the penalty phase hearing would have to be admissible under the normal rules of evidence rather than under the relevancy standard alone as contained in § 53a-46a (c) and explained in our earlier opinion. The state appeals from that ruling. We agree with the state that the statute requires a result contrary to that reached by the trial court.

The defendant also filed a renewed motion to compel the state to disclose any exculpatory information in its possession. As a result, the defendant obtained copies of contemporaneous notes made by former New London state's attorney C. Robert Satti, Sr., concerning his conversations with Miller before the original trial. Alleging that these copies should have been disclosed earlier, the defendant then moved, in the alternative, either for a bar to further prosecution or for a new trial. Finding that there had been adequate oral disclosure before the original trial, the trial court, *Miano, J.*, denied the defendant's request to bar the penalty phase hearing and declined to order a new guilt phase trial. Instead, the court directed the parties to proceed to the penalty phase hearing. The defendant appeals from those rulings. We are not persuaded by the defendant's challenge to the facts found by the trial court.

I

THE STATE'S APPEAL

The state's appeal requires us to reexamine the text and the context of § 53a-46a (c). As the defendant concedes, read literally, the statute allows "[a]ny information relevant to any mitigating factor [to] be presented *by either the state or the defendant,* regardless of its

admissibility under the rules governing admission of evidence in trials of criminal matters . . . ." (Emphasis added.) General Statutes § 53a-46a (c). The state urges us to accept this literal reading and to allow it, like the defendant, to introduce hearsay testimony that otherwise might be inadmissible. The defendant argues, as the trial court held, that we must excise the statutory reference to "the state" in order to comply with federal constitutional mandates[3] arising out of *Furman* v. *Georgia*, 408 U.S. 238, 92 S. Ct. 2726, 33 L. Ed. 2d 346 (1972), and its progeny.

Because the issue raised by the state concerns the construction of a statute, we have plenary authority to review the trial court's limiting construction. *State* v. *King*, 249 Conn. 645, 681, 735 A.2d 267 (1999); *State* v. *Dash*, 242 Conn. 143, 146–47, 698 A.2d 297 (1997). In this case, because we are persuaded that the text of the statute embodies its purpose and its agenda, we conclude that the defendant's argument is unavailing.

Perhaps in recognition of the difficulties inherent in the type of judicial surgery implicated by his substantive argument, the defendant urges us not to reach the certified issue in advance of the conclusion of the penalty phase hearing that has been ordered. He notes that it is uncertain, at this juncture, what mitigating evidence will be presented by the defendant and what rebuttal evidence the state may seek to introduce.

The considerations to which the defendant refers undergird our reluctance, as a general matter, to entertain interlocutory appeals. See *Cantoni* v. *Xerox Corp.*, 251 Conn. 153, 159, 740 A.2d 796 (1999). Pursuant to

---

[3] Although the defendant alludes to various provisions of the state constitution, he has proffered no reasoned argument that the state constitution compels a result that differs from that required to be reached under the federal constitution.

General Statutes § 52-265a,[4] however, the chief justice may certify that a substantial public interest in the expeditious resolution of some issue or issues warrants the immediate review of rulings that might otherwise have to await a final judgment at trial. That certification having been made in this case, it would serve no purpose now to remand for further penalty phase proceedings under the cloud of uncertainty that the certification was intended to dispel.

Indeed, as the state noted at oral argument in this case, in the absence of a certified appeal, the state never would have the opportunity to obtain appellate review of a trial court ruling restricting its evidentiary options at the penalty phase hearing of a capital case. If the trier were to conclude that the defendant had proved mitigation, the principles of double jeopardy would bar the state from appealing from a penalty phase judgment. *State* v. *Daniels*, 207 Conn. 374, 397, 542 A.2d 306, after remand for articulation, 209 Conn. 225, 550 A.2d 885 (1988), cert. denied, 489 U.S. 1069, 109 S. Ct. 1349, 103

[4] General Statutes § 52-265a provides: "(a) Notwithstanding the provisions of sections 52-264 and 52-265, any party to an action who is aggrieved by an order or decision of the Superior Court in an action which involves a matter of substantial public interest and in which delay may work a substantial injustice, may appeal under this section from the order or decision to the Supreme Court within two weeks from the date of the issuance of the order or decision. The appeal shall state the question of law on which it is based.

"(b) The Chief Justice shall, within one week of receipt of the appeal, rule whether the issue involves a substantial public interest and whether delay may work a substantial injustice.

"(c) Upon certification by the Chief Justice that a substantial public interest is involved and that delay may work a substantial injustice, the trial judge shall immediately transmit a certificate of his decision, together with a proper finding of fact, to the Chief Justice, who shall thereupon call a special session of the Supreme Court for the purpose of an immediate hearing upon the appeal.

"(d) The Chief Justice may make orders to expedite such appeals, including orders specifying the manner in which the record on appeal may be prepared."

L. Ed. 2d 817 (1989). If the trier were to find to the contrary, the state would be hard put to demonstrate aggrievement. The construction of the provisions of a death penalty statute should not be left in the unreviewable discretion of the trial court.

Turning then to the merits of the defendant's argument, we conclude that § 53a-46a (c) should be applied as written. The defendant cannot succeed in his argument that the constitutional demand for individualized sentencing requires a distinction between the evidentiary rules concerning the admissibility of aggravating evidence and the admissibility of mitigating evidence. The statute makes precisely that distinction, and requires the state to follow the ordinary rules of evidence when proving aggravating factors. The issue before us relates only to the state's ability to rebut potentially mitigating evidence.

The defendant fears that a penalty phase fact finder improperly may use derogatory evidence offered by the state in rebuttal of mitigation as a backup to assist the state in carrying its burden of proof of aggravation in accordance with the ordinary rules of evidence. An appropriate charge by the trial court can minimize that risk without depriving the state of an evenhanded opportunity to cast doubt on questionable evidence of mitigation. In *State* v. *Ross*, supra, 230 Conn. 270–71, we expressly recognized that, although relevance was the proper point of departure for determining statutory admissibility, a trial court would continue to have the authority to preserve the integrity of the proceeding before it. That authority necessarily encompasses the duty to exclude evidence that, although relevant, is, for example, too prejudicial to be admissible or that is cumulative of evidence previously introduced. Having the authority to make such an exclusionary ruling, the trial court indubitably also has the authority to instruct

the fact finder about the limited uses to which admissible evidence properly may be put. Contrary to the defendant's assertion, therefore, a literal reading of the statute does not divest a trial court of its traditional authority and obligation to exclude unreliable and unduly prejudicial evidence. As we read the statute, the trial court continues to be charged with the responsibility of minimizing the risk of fact finder confusion between evidence with respect to mitigation and evidence with respect to aggravation.

The defendant is equally unpersuasive when he argues that a literal reading of the statute unconstitutionally undermines the reliability of the capital sentencing process in its entirety. Concededly, such reliability requires that the sentencer have access to all relevant mitigating evidence. *Lockett* v. *Ohio*, 438 U.S. 586, 604, 98 S. Ct. 2954, 57 L. Ed. 2d 973 (1978). We fail, however, to see how that requirement is diluted by a statute allowing the state the same latitude to challenge mitigation evidence as the defendant is afforded to present such evidence. To the extent that the Supreme Court of the United States has spoken on this issue, its holdings support the constitutionality of the statute as drafted. In *Romano* v. *Oklahoma*, 512 U.S. 1, 10, 114 S. Ct. 2004, 129 L. Ed. 2d 1 (1994), the court stated that the fact that "evidence may have been irrelevant as a matter of state law, however, does not render its admission [on the issue of mitigation] federal constitutional error." Subsequently, in *Buchanan* v. *Angelone*, 522 U.S. 269, 276, 118 S. Ct. 757, 139 L. Ed. 2d 702 (1998), the court observed that "[i]n the selection phase, our cases have established that the sentencer may not be precluded from considering, and may not refuse to consider, any constitutionally relevant mitigating evidence. . . . However, the state may shape and structure the jury's consideration of mitigation so long as it does not preclude the jury from giving effect to

any relevant mitigating evidence. . . . Our consistent concern has been that restrictions on the jury's sentencing determination not preclude the jury from being able to give effect to mitigating evidence." (Citations omitted.) See also *Johnson* v. *Texas*, 509 U.S. 350, 113 S. Ct. 2658, 125 L. Ed. 2d 290 (1993); *Boyde* v. *California*, 494 U.S. 370, 110 S. Ct. 1190, 108 L. Ed. 2d 316 (1990). In the absence of a presentation of authority to the contrary by the defendant, he cannot succeed in his argument that constitutional considerations require a departure from the literal language of § 53a-46a (c).

In sum, we are not persuaded that the legislature departed from the governing federal constitutional norms in enacting § 53a-46a (c). The defendant has pointed to no federal precedent requiring the state to shoulder a higher evidentiary standard to rebut the existence of a mitigating factor than the defendant must satisfy to carry his burden of proof. Displacement of the ordinary rules of evidence does not preclude a trial court, guided by principles of sound judicial administration, from making the otherwise appropriate rulings that are necessary to assure a fair penalty phase hearing.

II

THE DEFENDANT'S APPEAL

The defendant's appeal invokes the disclosure requirements of *Brady* v. *Maryland*, supra, 373 U.S. 87, and its progeny. The defendant contends that the state failed to turn over to him certain exculpatory materials, and that this failure entitled him either to a bar on further prosecution, or, in the alternative, to a new trial. We disagree.

Certain additional facts are necessary to the resolution of this issue. Prior to the commencement of the defendant's trial in 1987, Miller, the psychiatric expert

employed by the state, examined the defendant. Subsequent to the examination, Miller issued a report in which he diagnosed the defendant as a sexual sadist, but concluded that the defendant was not legally insane. Eight months after his examination of the defendant, however, in a letter to Satti, the prosecutor handling the case, Miller expressed his doubts about "how I could testify against psychopathology playing a sufficient role in [the] defendant's behavior to mitigate the type of penalty." Both Miller's report and his letter to Satti were disclosed to the defendant at the time of his trial.

In two telephone conversations following Satti's receipt of Miller's letter, Satti and Miller discussed the defendant's case and Miller's diagnosis of the defendant's mental condition.[5] The only record of those conversations was a set of handwritten notes made contemporaneously by Satti. After Satti and Miller had spoken for the second time, Satti held a series of meetings with the defendant's attorneys, at which Satti allegedly made an oral disclosure of the contents of his notes of the two conversations with Miller.

On April 15, 1999, prior to the start of the defendant's second penalty hearing, the state provided the defendant with written copies of Satti's notes. The defendant thereafter made a motion to bar further prosecution, pursuant to our holding in State v. Colton, 234 Conn. 683, 692, 663 A.2d 339 (1995), cert. denied, 516 U.S. 1140, 116 S. Ct. 972, 133 L. Ed. 2d 892 (1996),[6] or, in

---

[5] The conversations took place on February 20, 1987, and March 3, 1987.

[6] In Colton we held that the double jeopardy clause "should be extended to bar a new trial . . . if the prosecutor in the first trial engaged in misconduct with the intent to prevent an acquittal that the prosecutor believed at the time was likely to occur in the absence of his misconduct." (Internal quotation marks omitted.) State v. Colton, supra, 234 Conn. 696. We held further that, where a defendant makes such a claim of prosecutorial misconduct, he "should [be] allowed the opportunity to create a record of the alleged prosecutorial misconduct in an attempt to carry his burden to prove a double jeopardy violation . . . ." Id., 700.

the alternative, for a new trial. The defendant claimed that Satti had not disclosed the contents of his notes at the time of the first trial, that the notes were exculpatory information within the purview of *Brady*, and that Satti's earlier failure to turn over the notes constituted misconduct sufficient to bar further prosecution pursuant to the *Colton* doctrine.

The trial court concluded that although the information contained in Satti's notes was exculpatory within the meaning of *Brady*, that information "was in fact disclosed to the defense . . . ." On the basis of this factual finding, the trial court held that the defendant "failed in [his] burden to prove the nondisclosure of exculpatory information relevant to the *Brady* claim of a violation of the right to a fair trial. [The defendant] failed [therefore] to prove prosecutorial misconduct relevant to the claim of a violation of the double jeopardy protections." Accordingly, the trial court denied the defendant's motion to bar further prosecution, and ordered that the case proceed to a penalty hearing.

On appeal, the defendant claims that the trial court improperly found that the state disclosed the contents of Satti's notes prior to trial. The defendant argues that he is entitled, therefore, to an opportunity to pursue further his motion to bar further prosecution, or, in the alternative, to a new trial.

A

The parameters of the state's duty to disclose exculpatory information to a defendant are well established. "In *Brady* v. *Maryland*, supra, 373 U.S. 87, the United States Supreme Court held that the suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. To establish a *Brady* violation, the defendant must show that (1) the

government suppressed evidence, (2) the suppressed evidence was favorable to the defendant, and (3) it was material. *State* v. *White*, 229 Conn. 125, 134–35, 640 A.2d 572 (1994); *Demers* v. *State*, 209 Conn. 143, 150, 547 A.2d 28 (1988)." (Internal quotation marks omitted.) *State* v. *Esposito*, 235 Conn. 802, 813, 670 A.2d 301 (1996).

Our resolution of the defendant's *Brady* claim comprises two separate inquiries: (1) whether, as a factual matter, the information in question actually was disclosed to the defendant, and (2) whether, if the information in question was not disclosed, as a legal matter, it was both exculpatory and material within the meaning of *Brady* and its progeny. *State* v. *Santiago*, 245 Conn. 301, 311, 715 A.2d 1 (1998). We conclude that the trial court's finding that the information at issue in this case was disclosed to the defendant was not clearly erroneous, and, further, that the information itself was not material as that term has been defined in the *Brady* context.

B

The trial court concluded that the state had disclosed the contents of Satti's notes to the defendant prior to his 1987 trial. It is undisputed that whether such disclosure actually took place is a question of fact. As such, our review of that question is subject to well established guidelines. "[W]here the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous. That is the standard and scope of this court's judicial review of decisions of the trial court. Beyond that, we will not go. *Pandolphe's Auto Parts, Inc.* v. *Manchester*, 181 Conn. 217, 221–22, 435 A.2d 24 (1980). *State* v. *Zindros*, 189 Conn. 228,

238, 456 A.2d 288 (1983), cert. denied, 465 U.S. 1012, 104 S. Ct. 1014, 79 L. Ed. 2d 244 (1984)." (Internal quotation marks omitted.) *State* v. *Eady*, 249 Conn. 431, 436, 733 A.2d 112, cert. denied,    U.S.   , 120 S. Ct. 551, 145 L. Ed. 2d 428 (1999). "A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . *State* v. *Hodge*, 248 Conn. 207, 218–24, 726 A.2d 531 (1999)." (Internal quotation marks omitted.) *State* v. *King*, supra, 249 Conn. 660.

Our review of the entire record in this case compels the conclusion that the trial court's finding of an oral disclosure by Satti of the contents of the notes was not clearly erroneous. The meeting at which Satti allegedly read the contents of his notes to the defendant's attorneys took place on March 18, 1987.[7] Four persons were present at that meeting: Satti, the defendant's two attorneys, and Inspector Thomas Viens. All four testified at the hearing held by Judge Miano. The trial court found that of the four persons present at the March 18 meeting, only Satti and Viens took notes of what transpired. It was the regular practice of both Satti and Viens to make "notes of conversations and meetings with others contemporaneously in order to memorialize that which was said or that which transpired." The notes taken by Satti and Viens at the March 18 meeting contain clear references to an oral disclosure to the defendant's attorneys of the contents of Satti's earlier notes of his conversations with Miller.

The trial court also considered the testimony of the defendant's attorneys. In contrast to Satti and Viens, the defendant's attorneys "testified that they [did] not

[7] The trial court also found that two prior meetings had occurred, on March 6, 1987, and March 10, 1987. The disclosure of the notes at issue did not take place, however, until the March 18 meeting.

recall the contents of the Satti notes being imparted to them at the first trial." The defendant's attorneys testified further, and the defendant claimed at oral argument before this court, "that the information in the Satti notes was of such significance that they would have recalled it, had it been disclosed in 1987."

Any resolution of the discrepancy between the testimony of Satti and Viens that an oral disclosure was made, supported by their notes of the March 18 meeting, and the lack of recollection on the part of the defendant's attorneys of such a disclosure, depends ineluctably on an assessment of their relative credibility. "[W]e give great deference to the findings of the trial court because of its function to weigh and interpret the evidence before it and to pass upon the credibility of witnesses." (Internal quotation marks omitted.) *Hartford Electric Supply Co.* v. *Allen-Bradley Co.*, 250 Conn. 334, 346, 736 A.2d 824 (1999). "The determination of a witness' credibility is the special function of the trial court." (Internal quotation marks omitted.) *State* v. *Daniels*, 248 Conn. 64, 77, 726 A.2d 520 (1999).

After hearing the testimony of all four persons present at the March 18 meeting, and after carefully reviewing the notes taken at that meeting by Satti and Viens, the trial court found that "the Satti-Viens notes of meetings held are authentic and accurate. Accordingly, the notes corroborate, to a significant degree, the testimony of [Satti and Viens]. This corroboration compels this court to give greater weight to the testimony of Satti and Viens relevant to disclosure." This determination of credibility is precisely the type of finding that rests within the unique province of the trial court, and is one that we do not disturb in the absence of a finding of clear error. As no such impropriety is evident from the record, we decline to disturb the trial court's determination that an oral disclosure was made.

## C

Even were we to conclude that the state did not disclose the contents of Satti's notes, that suppression would not constitute a *Brady* violation. The second and third prongs of the *Brady* standard require that the information sought be not only exculpatory, but also material to the question of guilt or innocence. *State* v. *Esposito*, supra, 235 Conn. 813. We conclude that the information at issue in this case was not material, as that term has been defined in the *Brady* context.[8]

In *United States* v. *Bagley*, 473 U.S. 667, 682, 105 S. Ct. 3375, 87 L. Ed. 2d 481 (1985), the United States Supreme Court defined materiality, for *Brady* purposes, as "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." In a recent exposition of *Brady* doctrine, the Supreme Court discussed several "aspects of materiality under *Bagley* [that] bear emphasis." *Kyles* v. *Whitley*, 514 U.S. 419, 434, 115 S. Ct. 1555, 131 L. Ed. 2d 490 (1995). Most significantly for our purposes, the *Kyles* opinion noted that "the Constitution is not violated every time the government fails or chooses not to disclose evidence that might prove helpful to the defense. . . . We have never held that the Constitution demands an open file policy . . . ." (Citations omitted.) Id., 436–37. The key question that we must ask whenever a *Brady* violation is alleged "is not whether the defendant would more likely than not have received a different verdict with the evidence, *but whether in its absence he received a fair trial,* understood as a trial resulting in a verdict worthy of confidence." (Emphasis added.) Id., 434; see *Strickler* v. *Greene*, 527 U.S. 263, 289–90, 119 S. Ct. 1936, 144 L. Ed. 2d 286 (1999) (reaffirming the *Kyles* materiality definition).

[8] Because we conclude that the information sought was not material, we do not address the trial court's conclusion that the information was exculpatory.

We have applied the *Kyles* materiality standard in several recent cases. In *State* v. *Esposito*, supra, 235 Conn. 818–19, the defendant claimed that the state's failure to disclose a tape recording in which a key witness made certain statements that were inconsistent with that witness' later testimony constituted a *Brady* violation, inasmuch as the tape recording may have proved useful for impeachment purposes. We held, however, that "the undisclosed tape recording [was not] material within the *Brady* meaning of that term." (Internal quotation marks omitted.) Id., 818. Our basis for that holding was that "the undisclosed tape recording would not have provided the defendant with any significant impeachment material *that was not already available and used by him* . . . [and, therefore, the] nondisclosure neither deprived the defendant of a fair trial nor undermines our confidence in the outcome of this trial." (Emphasis added.) Id., 819. We have reached similar conclusions regarding the nonmateriality of undisclosed evidence in other cases as well. See *State* v. *Santiago*, supra, 245 Conn. 312–13 (witness' statement regarding description of shooter's clothing not material); *State* v. *Tomasko*, 242 Conn. 505, 522, 700 A.2d 28 (1997) (witness' alleged accusation of third party not material because nondisclosure did not "undermine confidence in the jury's verdict"); *State* v. *Rasmussen*, 225 Conn. 55, 92, 621 A.2d 728 (1993) (undisclosed information about telephone calls allegedly made by defendant not material).[9]

As was the case in *Esposito*, even if the information at issue here was not disclosed to the defendant, it was not material within the meaning of *Brady* because it was available to the defendant through other, independent sources. The defendant, through his counsel, was free

[9] Contrast our conclusions in those cases with *State* v. *White*, supra, 229 Conn. 136, in which we held undisclosed information about the *only* witness at the defendants' probable cause hearing to be material by virtue of the fact that "[the witness'] testimony was the only evidence connecting [the defendants] to the crimes . . . ."

to contact Miller and question him regarding his opinion of the defendant's mental condition. There is no suggestion in the record, and the defendant does not allege, that the state attempted to prevent such contact. Therefore, any failure to disclose fully the contents of the conversations between Satti and Miller does not meet the materiality standard of *Bagley* and *Kyles*.

The judgment is reversed in part and the case is remanded with direction to deny the defendant's motion in limine and for further proceedings according to law.

In this opinion SULLIVAN, CALLAHAN and SCHALLER, Js., concurred.

NORCOTT, J., dissenting. Although I find the analytic reasoning set forth by the majority to be flawless, I must dissent because it leads inexorably to a judgment to which I am opposed. As I have expressed previously, I believe that the death penalty is violative of the Connecticut constitution and, therefore, is legally and morally unacceptable. See *State* v. *Cobb*, 251 Conn. 285, 543, 743 A.2d 1 (1999) (*Norcott, J.*, dissenting); *State* v. *Webb*, 238 Conn. 389, 566, 680 A.2d 147 (1996) (*Norcott, J.*, dissenting).

Accordingly, I respectfully dissent.