******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

# STATE OF CONNECTICUT *v.* PATRICK M.*
## (SC 20925)

Mullins, C. J., and McDonald, D'Auria, Ecker and Dannehy, Js.

*Syllabus*

This court recognized in *State* v. *Colton* (234 Conn. 683) that, in accordance with the United States Supreme Court's decision in *Oregon* v. *Kennedy* (456 U.S. 667), and the Second Circuit Court of Appeals' decision in *United States* v. *Wallach* (979 F.2d 912), the double jeopardy clause of the federal constitution bars a retrial if the prosecutor had engaged in impropriety with the intent to prevent an acquittal that the prosecutor believed was imminent in the absence of the impropriety.

The defendant filed an interlocutory appeal with this court from the trial court's denial of his motion to dismiss the murder charge against him. The defendant previously had been convicted of, among other crimes, murder, but this court reversed his murder conviction and ordered a new trial on the ground that the prosecutor, during the defendant's earlier criminal trial, had improperly commented on the defendant's silence occurring after he had been informed of his rights under *Miranda* v. *Arizona* (384 U.S. 436), in violation of *Doyle* v. *Ohio* (426 U.S. 610). On appeal from the denial of the motion to dismiss, the defendant claimed, inter alia, that double jeopardy protections barred a retrial on the murder charge insofar as the prosecutor, in commenting on the defendant's post-*Miranda* silence, had intended to prevent an acquittal that the prosecutor believed was imminent in the absence of the *Doyle* violation. *Held*:

The trial court correctly determined that the defendant failed to establish that the prosecutor, in commenting on the defendant's post-*Miranda* silence, had intended to prevent an acquittal that the prosecutor believed was likely to occur but for the prosecutor's improper comments, and, accordingly, the trial court properly denied the defendant's motion to dismiss.

The defendant did not waive his double jeopardy claim by failing to move for a mistrial despite his awareness of the prosecutor's *Doyle* violation, as defense counsel moved for a new trial after the jury verdict on the ground that that prosecutor had violated the defendant's rights under *Doyle*, and the fact that the defense moved for a new trial rather than a mistrial did not change the fact that the reason for doing so was because of a claimed constitutional violation by the prosecutor.

---

* In accordance with our policy of protecting the privacy interests of the victims of family violence, we decline to use the defendant's full name or to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

The defendant, in connection with his motion to dismiss, did not present any additional evidence regarding the prosecutor's intent during the defendant's criminal trial, this court previously had concluded that the evidence presented at the defendant's trial was sufficient to sustain his murder conviction, and the transcripts of the prosecutor's cross-examination of the defendant and closing argument, when assessed objectively, revealed that the prosecutor was attempting to secure the defendant's conviction rather than to goad the defense into moving for a mistrial on the basis of the prosecutor's belief that an acquittal was likely to occur but for the *Doyle* violation.

Moreover, this court declined the state's request to overrule *Colton* and declined the defendant's request to overrule *State* v. *Michael J.* (274 Conn. 321), in which the court concluded that the state constitution did not provide broader double jeopardy protections in this context.

Argued January 31—officially released June 3, 2025

*Procedural History*

Substitute information charging the defendant with the crimes of murder and criminal possession of a firearm, brought to the Superior Court in the judicial district of New Britain, where the charge of murder was tried to the jury before *Oliver, J.*; verdict of guilty; thereafter, the charge of criminal possession of a firearm was tried to the court, *Oliver, J.*; finding of guilty; judgment of guilty in accordance with the jury's verdict and the court's finding, from which the defendant appealed to this court, which reversed the judgment and remanded the case for a new trial; subsequently, the court, *Keegan, J.*, denied the defendant's motion to dismiss, and the defendant appealed to this court. *Affirmed.*

*Michael W. Brown*, assigned counsel, for the appellant (defendant).

*Jonathan M. Sousa*, assistant state's attorney, with whom, on the brief, was *Christian M. Watson*, state's attorney, for the appellee (state).

*Opinion*

D'AURIA, J. In this interlocutory appeal, the defendant, Patrick M., appeals following the trial court's

denial of his motion to dismiss the charge of murder in violation of General Statutes § 53a-54a (a) in connection with the death of his wife, the victim, Y, contending that, in light of our reversal of his earlier conviction on the ground of prosecutorial impropriety, retrying him would violate his constitutional right against double jeopardy. The defendant had been previously convicted of the currently pending murder charge following a jury trial, as well as criminal possession of a firearm in violation of General Statutes § 53a-217 (a) (1) following a bench trial, resulting in a total effective sentence of fifty-five years of incarceration. This court reversed the defendant's murder conviction[1] and remanded the case for a new trial on that charge after determining that the prosecutor had improperly commented on the defendant's post-*Miranda*[2] silence at trial, violating his right to a fair trial under *Doyle* v. *Ohio*, 426 U.S. 610, 619, 96 S. Ct. 2240, 49 L. Ed. 2d 91 (1976). See *State* v. *Patrick M.*, 344 Conn. 565, 569–70, 280 A.3d 461 (2022). The defendant argues that the double jeopardy clause of the fifth amendment to the federal constitution, which is applicable to the states through the due process clause of the fourteenth amendment; see, e.g., *Benton* v. *Maryland*, 395 U.S. 784, 794, 89 S. Ct. 2056, 23 L. Ed. 2d 707 (1969); bars a retrial because the prosecutor had violated *Doyle* with the intent to prevent an acquittal that the prosecutor believed was imminent absent the *Doyle* violation. We disagree and affirm the trial court's decision.

The jury reasonably could have found the following facts relevant to this appeal, as summarized in *State* v.

---

[1] This court did not reverse the defendant's conviction of criminal possession of a firearm.

[2] *Miranda* v. *Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966); see id., 468 n.37 ("[I]t is impermissible to penalize an individual for exercising his [f]ifth [a]mendment privilege when he is under police custodial interrogation. The prosecution may not, therefore, use at trial the fact that he stood mute or claimed his privilege in the face of accusation.").

*Patrick M.*, supra, 344 Conn. 569–70. The defendant and the victim were married in 2015 and had one child together, P. Id., 570. On April 7, 2017, a neighbor called the police because she heard "fighting, yelling, and bodies being tossed around" in the defendant's apartment in New Britain. Id. The police forcibly entered the apartment after no one answered the door and found the victim "face down in a pool of blood" with multiple gunshot wounds to the head. Id. P was nowhere to be seen. Id., 571. At the crime scene, the police found gun shell casings, bullet fragments, multiple cell phones, narcotics, approximately $2900 in cash, and evidence of a struggle. Id. The police ultimately located P in Brooklyn, New York, at the home of the defendant's sister. Id. The defendant's sister told the police that he had brought P to her house during the morning of April 8, 2017, asking that she "take care of [his] daughter." (Internal quotation marks omitted.) Id. The defendant also called his aunt on that date, telling her, "I love you. . . . I'm sorry. I'm on the run." (Internal quotation marks omitted.) Id., 573–74.

The police found the defendant several days later in Massachusetts. Id. He was arrested and charged with murder and criminal possession of a firearm, for which he respectively elected a jury trial and a bench trial. Id. At trial, Dwayne Watson, who had a child with the victim's sister, testified that, on the day of the victim's death, he saw the defendant twice in a gray vehicle, once in the afternoon when the defendant picked P up from school, and again in the evening when the defendant drove to Hartford. Id. Another witness, Daniel Thomas, who worked with the defendant selling drugs, testified that, after learning that the victim had been killed, he "received a phone call from the defendant, in which the defendant asked him what was going on out there. Thomas responded that people [were] saying that you killed your girl, and the defendant

replied, for real? That's what they saying?" (Internal quotation marks omitted.) Id., 572. The next morning, Thomas received a text from the defendant asking him to pick up the gray vehicle in Brooklyn and to look up how much time someone would get in prison for murder. Id.

The defendant testified in his own defense, stating that he had picked up P from school in the gray vehicle but later drove to Hartford in a blue vehicle. Id., 573. He testified that he had entered his apartment, noticed that a large amount of cash and drugs were missing, and saw the victim dead on the floor. Id. He then stated that, out of fear, he grabbed P and drove to New York to get her to safety. Id. He testified that he did not contact the police because Thomas called him while he was driving to New York and told him that he was a suspect in the victim's murder. Id.

The jury found the defendant guilty of murder. On appeal, this court reversed the defendant's murder conviction and ordered a new trial based on the prosecutor's *Doyle* violation at the defendant's jury trial. Specifically, that violation consisted of the prosecutor's repeated comments during closing argument that the defendant's silence until the time of trial suggested that he was fabricating his testimony. Id., 579. Summarizing that argument, we noted that "[t]he prosecutor first invoked this theme . . . by arguing: 'Now, the defendant told you today [that] his fear [was] the reason for taking the child to New York. Considering your common sense, would it be reasonable to tell your close family about the event? *I submit to you* [*that*] *the first time we're hearing anything about this sequence of events or the basis was this morning through* [*the defendant's*] *testimony*.' . . . The prosecutor asked the jury whether the defendant's 'reaction, this fear reaction and the actions that [the defendant] testified to you today that he took, does that fit your commonsense view of

how a parent would behave in the wake of the violent death of [his] spouse, or would that parent be taking every step possible to comfort, to shield [P] from what had just happened, and to try very hard, if there were an alternative theory, and I submit to you that there isn't . . . to make sure that that theory was properly investigated? But [the defendant] didn't do that.' Instead, he 'went to New London, and he hung out with some woman for a couple days,' and then went to Massachusetts.

"The prosecutor soon returned to the theme that the version of events to which the defendant testified at trial was a recent fabrication: 'Now, today you heard *for the first time* about this subsequent meeting where [the defendant] goes to Hartford to see . . . Thomas, gets some marijuana, change[s] cars, get[s] the car that has the trap set up in it so that he could secure the money for the ride down to New York. . . . Now, *this morning you hear about* the trip to New London, you hear about the ultimate trip to Massachusetts to the friend's relative's house, and you hear, *for the first time this morning*, the mention of this large quantity of drug money. The follow-up trip to Hartford *is the first time you heard about that this morning*. And common sense would show you that this information, closer to the time of the crime, might be important to direct the investigation.' . . . The prosecutor also argued that the defendant 'can't really have it both ways'; he cannot criticize the police for their failure to investigate a robbery while at the same time refus[e] to disclose that a robbery occurred. '*If [the police] had information closer to the time of this incident that this was a robbery* involving a very large quantity, essentially more than most people's annual income was on this kitchen table, if you're to believe that, the police probably would have changed the tactics that they used to investigate this crime. We'll never know because they didn't know

that because *the first time you heard about it was this morning.*' " (Emphasis in original.) Id., 579–80.

On remand, the defendant moved to dismiss the trial charge, arguing that the prosecutor had committed impropriety during the trial with the intent to prevent an acquittal that the prosecutor believed was imminent absent the impropriety. See *State* v. *Colton*, 234 Conn. 683, 696, 663 A.2d 339 (1995) (double jeopardy clause bars new trial when "prosecutor in the first trial engaged in [impropriety] with the intent 'to prevent an acquittal that the prosecutor believed at the time was likely to occur in the absence of his [impropriety]' "), cert. denied, 516 U.S. 1140, 116 S. Ct. 972, 133 L. Ed. 2d 892 (1996). The defendant did not request a hearing during which he could provide evidence demonstrating the prosecutor's intent at the time of the impropriety, instead asking the trial court to infer the prosecutor's intent based on the existing record, consisting of the transcripts from the trial and this court's decision in *State* v. *Patrick M.*, supra, 344 Conn. 565. The state argued in response that the prosecutor's impropriety did not amount to the intentional mindset that this court articulated in *Colton*, given that this court did not remand the matter for dismissal despite its awareness of *Colton*. The trial court, applying *Colton*, denied the defendant's motion to dismiss because, based on its review of the record, it did not "seem like the *Doyle* violation . . . was intended to impede the possibility of a mistrial."

The defendant then filed this direct interlocutory appeal with this court pursuant to General Statutes § 51-199 (b) (3), challenging the denial of his motion to dismiss. See, e.g., *State* v. *Butler*, 262 Conn. 167, 172 n.4, 810 A.2d 791 (2002) ("[a]lleged violations of the right against double jeopardy fall within the 'small class of cases that [meet] the test of being effectively unreviewable on appeal from a final judgment and therefore,

[are] subject to interlocutory review' "). On appeal, the defendant renews his argument that the double jeopardy clause bars his retrial because the prosecutor intentionally violated *Doyle* during the jury trial to prevent an acquittal that the prosecutor believed was imminent absent the impropriety. The defendant specifically contends that the trial court improperly based its conclusion on this court's previous determination that the evidence was sufficient to support his conviction and that the trial court should have instead focused its inquiry on this court's previous assessment that the evidence, although sufficient, was not overwhelming, as well as on the relationship between the impropriety and the weaker aspects of the state's case. He posits that, had the trial court focused its inquiry in this way, it would have determined that the prosecutor had the requisite intent to prevent an acquittal. He further claims that, even if the trial court had applied the proper legal standard, the Connecticut constitution bars a new trial because it offers broader double jeopardy protections than its federal counterpart and that this court should accordingly overrule *State* v. *Michael J.*, 274 Conn. 321, 360–61, 875 A.2d 510 (2005), which held otherwise.

In response, the state first asserts that this court should dispose of the defendant's claim in its entirety by overruling *Colton* because the federal protection against double jeopardy should not bar a new trial absent the exception expressed in *Oregon* v. *Kennedy*, 456 U.S. 667, 676, 102 S. Ct. 2083, 72 L. Ed. 2d 416 (1982), or, if the conviction was reversed on the ground of insufficient evidence. The state next argues that, even if we do not overrule *Colton*, the defendant nevertheless waived his claim because, rather than moving for a mistrial after the prosecutorial impropriety took place, he moved for a new trial but failed on remand to present supplemental evidence demonstrating the prosecutor's

intent. Finally, the state argues that, even if the defendant's claim was not waived, it fails on the merits because the trial court reasonably concluded that the prosecutor did not have the necessary intent to bar a retrial.

For the following reasons, we decline the parties' invitation to overrule our precedent and conclude that the defendant has failed, pursuant to *Colton*, to demonstrate that the prosecutor had engaged in impropriety with the intent to prevent an acquittal that the prosecutor believed to be imminent absent the impropriety.

I

The double jeopardy clause of the fifth amendment to the United States constitution bars a retrial if the prosecutor engaged in impropriety at trial with the intent to prevent an acquittal that he believed was imminent absent the impropriety. See *State* v. *Colton*, supra, 234 Conn. 696; see also U.S. Const., amend. V. This protection stems from the United States Supreme Court's decision in *Oregon* v. *Kennedy*, supra, 456 U.S. 667, which held that "[o]nly where the governmental conduct in question is intended to 'goad' the defendant into moving for a mistrial may a defendant raise the bar of double jeopardy to a second trial after having succeeded in aborting the first on his own motion." Id., 676. In *United States* v. *Wallach*, 979 F.2d 912 (2d Cir. 1992), cert. denied, 508 U.S. 939, 113 S. Ct. 2414, 124 L. Ed. 2d 637 (1993), the United States Court of Appeals for the Second Circuit reasoned that this rule applied to the circumstances we would later recognize in *Colton*, considering that "[t]he prosecutor who acts with the intention of goading the defendant into making a mistrial motion presumably does so because he believes that completion of the trial will likely result in an acquittal. That aspect of the *Kennedy* rationale suggests precluding retrial [when] a prosecutor apprehends an acquittal

and, instead of provoking a mistrial, avoids the acquittal by an act of deliberate [impropriety].''[3] Id., 916. In *Colton*, this court adopted *Wallach*'s logic, noting in particular its agreement with ''[t]he reasoning for expanding the *Kennedy* doctrine in this limited circumstance . . . in which some of the evidence that the defendant intended to use to demonstrate prosecutorial [impropriety] was not part of the record on appeal from the previous trial.'' *State* v. *Colton*, supra, 696.

Before turning to the merits of the defendant's double jeopardy claim, we must first address several preliminary issues, including the parties' requests to overrule our precedent, the state's contention that the defendant has waived his claim, and the applicable standard of review.

### A

The state asks that we overrule *Colton*, and the defendant asks that we overrule *Michael J*. We reject both requests. We first address the state's argument that we

---

[3] The state discounts language in *Wallach* as dictum and quotes *United States* v. *Brown*, 994 F.3d 147 (3d Cir. 2021), stating that ''[e]very [federal] circuit . . . has declined to expand the *Kennedy* exception beyond the mistrial context.'' Id., 155. Although the state is right that the principle we adopted in *Colton* derived from dictum, the Second Circuit has upheld that dictum; see, e.g., *United States* v. *Pavloyianis*, 996 F.2d 1467, 1473–74 (2d Cir. 1993); and has consistently reiterated the rule in subsequent decisions. See, e.g., *United States* v. *Walls*, Docket No. 23-6019-cr, 2023 WL 3807407, *2 (2d Cir. June 5, 2023); *United States* v. *Ruiz*, Docket Nos. 95-1677(L), 96-1046 and 96-1161, 1996 WL 612461, *4 (2d Cir. October 24, 1996) (decision without published opinion, 104 F.3d 351), cert. denied, 519 U.S. 1155, 117 S. Ct. 1095, 137 L. Ed. 2d 227 (1997), and cert. denied sub nom. *United States* v. *Torres*, 522 U.S. 878, 118 S. Ct. 201, 139 L. Ed. 2d 138 (1997); *United States* v. *Millan*, 17 F.3d 14, 18–19 (2d Cir. 1994). Further, it is inaccurate to state that every federal circuit has disregarded *Wallach*, considering that multiple circuits have not addressed the question, and at least one has expressed agreement with the logic of *Wallach*. See *United States* v. *Gary*, 74 F.3d 304, 315 (1st Cir.) (overruled in part on other grounds by *Johnson* v. *United States*, 576 U.S. 591, 135 S. Ct. 2551, 192 L. Ed. 2d 569 (2015)), cert. denied, 518 U.S. 1026, 116 S. Ct. 2567, 135 L. Ed. 2d 1084 (1996).

should overturn *Colton* altogether because it is inconsistent with federal double jeopardy jurisprudence. The state argues that the protection against double jeopardy should not bar a retrial unless the defendant's conviction is reversed on the ground of insufficient evidence, or, if his request for a mistrial is *granted* in response to the prosecutor's " 'goad[ing]' " the defendant to move for a mistrial based on *Oregon* v. *Kennedy*, supra, 456 U.S. 676. The state argues that the defendant is not entitled to relief because neither predicate occurred in the present case.

In *Colton*, however, we embraced extending *Kennedy* "to bar a new trial, even in the absence of a mistrial . . . if the prosecutor in the first trial engaged in [impropriety] with the intent to prevent an acquittal that [he] believed at the time was likely to occur in the absence of his [impropriety]." (Internal quotation marks omitted.) *State* v. *Colton*, supra, 234 Conn. 696. Our embrace of *Wallach* is consistent with *Kennedy*'s reasoning, considering that the type of prosecutorial intent that we described in *Colton* threatens exactly what the double jeopardy clause protects: "that the defendant retain primary control over the course to be followed in the event of such [impropriety]." (Internal quotation marks omitted.) *Oregon* v. *Kennedy*, supra, 456 U.S. 676. In other words, if the prosecutor engages in impropriety with the intent to prevent an acquittal that he believes to be imminent absent the impropriety, he takes the reins away from the defendant in the manner that *Kennedy* bars, regardless of whether the defendant has previously moved for a mistrial or succeeded on a mistrial motion.

This is not the first time the state has asked us to reject this extension of *Kennedy*. In *Colton* itself, the state asked us to limit *Kennedy* claims to those situations in which a defendant has successfully moved for a mistrial because it "allows the trial court, which is in

the best position to assess all the factors, to make a finding as to whether the prosecutor acted with the intent to 'goad' the defendant into moving for a mistrial." *State* v. *Colton*, Conn. Supreme Court Records & Briefs, May Term, 1995, Pt. 2, State's Brief p. 27. The state next asked us in *Butler* to overrule *Colton*, expounding on the "critical" distinction between mistrials and completed trials because, in its opinion, only a mistrial subverts "a defendant's valued right to have his trial completed by a particular tribunal." (Internal quotation marks omitted.) *State* v. *Butler*, Conn. Supreme Court Records & Briefs, September Term, 2002, Pt. 11, State's Brief p. 22. We rejected the state's argument in *Colton* and declined to address it in *Butler* because the defendant in that case could not prevail on the merits of his claim. See *State* v. *Butler*, supra, 262 Conn. 173 n.5. Although, as we will explain, the defendant in the present case also cannot prevail on the merits of his claim, we believe that, at this juncture, it is sensible to address substantively the state's request that we overrule *Colton*.

The state's briefs in *Butler* and in the present case capture precisely why we have adhered to our decision in *Colton*. In *Butler*, the state noted that "the *Kennedy* rule is designed to hinder a prosecutor's ability to scuttle a case that he or she knows is moving toward an acquittal and thus avoid decision by the trier of fact." *State* v. *Butler*, Conn. Supreme Court Records & Briefs, supra, State's Brief p. 22. In the present case, the state notes that, "under *Kennedy*, it is the prosecutor's intent to weaponize the defendant's double jeopardy protection that bars a retrial . . . ." These briefs accurately articulate the principle that prohibits a new trial but misapprehend the natural conclusion of that principle: it is that *intent* of the prosecutor, not the defendant's response to the impropriety, that bars a new trial. These cases demonstrate that this court has sought to avoid

different outcomes based on the precise manner in which a defendant responds to a prosecutor's impropriety because allowing for such outcomes would dilute the double jeopardy protection that the federal constitution provides and, in our view, would not sufficiently deter prosecutorial impropriety. For this reason, courts in several other states do not require that the defendant successfully move for a mistrial after a prosecutor commits impropriety with the specific intent to goad a defendant into doing so. See, e.g., *State* v. *Marti*, 147 N.H. 168, 172, 784 A.2d 1193 (2001); see also *State* v. *D'Auria*, 229 Ga. App. 34, 35, 492 S.E.2d 918 (1997), rev'd on other grounds, 270 Ga. 499, 512 S.E.2d 266 (1999); *State* v. *Rogan*, 91 Haw. 405, 420, 423, 984 P.2d 1231 (1999); *State* v. *Chase*, 754 A.2d 961, 963–64 (Me. 2000); *Commonwealth* v. *Smith*, 532 Pa. 177, 186, 615 A.2d 321 (1992); *State* v. *Lettice*, 221 Wis. 2d 69, 89, 585 N.W.2d 171 (App. 1998). Because *Colton* is consistent with *Kennedy*, we decline to overrule *Colton*.[4]

We next turn to the defendant's request that we overrule *State* v. *Michael J.*, supra, 274 Conn. 321, in which this court held that the Connecticut constitution does not provide broader double jeopardy protections than those articulated in *Kennedy* and *Wallach*. See id., 349. The defendant asks that we overturn *Michael J.* because "the Connecticut constitution should protect criminal defendants from facing a retrial after flagrant [impropriety] deprived them of a meaningful chance of an acquittal and where the unfairness is not adequately remedied by the provision of a new criminal trial to the defendant." We decline this invitation and reassert our confi-

---

[4] Although we stand by the rationale of our decision in *Colton*, we also decline to revisit that precedent based on the doctrine of stare decisis, which "counsels that a court should not overrule its earlier decisions unless the most cogent reasons and inescapable logic require it." (Internal quotation marks omitted.) *State* v. *Adam P.*, 351 Conn. 213, 223, 330 A.3d 73 (2025). The state has not persuaded us that cogent reasons or inescapable logic exists that would compel us to overrule *Colton*.

dence in the thorough *Geisler* analysis; see *State* v. *Geisler*, 222 Conn. 672, 684–86, 610 A.2d 1225 (1992); that we undertook in *Michael J.* We began that analysis by considering that "[t]he constitution of Connecticut does not contain an express prohibition against double jeopardy . . . [and] a historical review reveals that the exclusion of a textual ban on double jeopardy from the constitution of Connecticut was . . . the product of a conscious decision by our constitutional forebears . . . [who] were concerned that the addition of such a clause might be perceived as a change in Connecticut law . . . which historically afforded defendants far less protection against double jeopardy than the federal constitution." (Citations omitted; footnote omitted.) *State* v. *Michael J.*, supra, 350–51. We noted in *Michael J.* that, under Connecticut common law dating to at least 1894, "jeopardy for the defendant continued until a result was attained that was free from error, even if that required multiple trials . . . in direct contrast to federal constitutional jurisprudence" from the same time period. Id., 352; see *State* v. *Lee*, 65 Conn. 265, 272, 30 A. 1110 (1894); see also *State* v. *Palko*, 122 Conn. 529, 541–42, 191 A. 320 (adhering to *Lee*), aff'd, 302 U.S. 319, 58 S. Ct. 149, 82 L. Ed. 288 (1937). Contra *Kepner* v. *United States*, 195 U.S. 100, 129, 133, 24 S. Ct. 797, 49 L. Ed. 114 (1904). We also relied on the fact that neither this court nor the Appellate Court had ever "held that the double jeopardy guarantees implied in the state constitution exceed those embodied in the federal constitution"; *State* v. *Michael J.*, supra, 354; and that "the United States Supreme Court has never repudiated the narrow test adopted in *Oregon* v. *Kennedy*, supra, 456 U.S. 679 . . . ." *State* v. *Michael J.*, supra, 355; see, e.g., *State* v. *Anderson*, 295 Conn. 1, 8, 988 A.2d 276 (2010); *State* v. *Laws*, 37 Conn. App. 276, 292–95, 655 A.2d 1131, cert. denied, 234 Conn. 907, 659 A.2d 1210 (1995). We noted, too, that, although some state courts have

adopted a broader approach, they did so "on the basis of their construction of specific double jeopardy provisions embodied in their respective state constitutions." *State* v. *Michael J.*, supra, 360. Finally, we remarked that, "even if judges were inclined to dismiss the charges on the ground of double jeopardy in those jurisdictions that have adopted broader tests, society's interest in enforcing its criminal laws would be compromised in those cases in which the prosecutorial [impropriety] was not sufficiently egregious to implicate truly the defendant's double jeopardy rights." Id.

We acknowledge that there are factual differences between the present case and *Michael J.*, but those factual differences do not alter our consideration of the protection against double jeopardy afforded by the Connecticut constitution. Put differently, the fact that "the issue in *Michael J.* was the violation of an order on a motion in limine, while the issue here is a violation of a core constitutional principle," does not alter the outcome of the *Geisler* analysis this court undertook in *Michael J.* to ascertain the scope of protection against double jeopardy that the Connecticut constitution provides. See footnote 6 of this opinion and accompanying text. Although the defendant is correct that "our jurisprudence has been altered considerably" with respect to certain constitutional protections not expressly laid out in the Connecticut constitution, such as the abolition of the death penalty; see *State* v. *Santiago*, 318 Conn. 1, 85–86, 122 A.3d 1 (2015); the reasoning underlying that changed jurisprudence does not transfer to the present circumstance. For example, in *Santiago*, this court reviewed "five objective indicia that have been deemed relevant under both the federal and state constitutions" and the possible "legitimate penological purpose[s]" the death penalty might advance, holding that none supported maintaining the death penalty. Id., 85, 87. But we have already reviewed the relevant consider-

ations in *Michael J.* that would support an altered juris-prudential outlook, namely, the "contemporary understandings of applicable economic and sociological norms," and have concluded otherwise. (Internal quotation marks omitted.) *State* v. *Michael J.*, supra, 274 Conn. 350. We therefore also decline to overrule our decision in *Michael J.* because we are once again not persuaded that cogent reasons or inescapable logic exists that would compel us to do so. See, e.g., *State* v. *Adam P.*, 351 Conn. 213, 223, 330 A.3d 73 (2025).

B

Having denied the parties' respective requests that we overrule our precedents, we now turn to the state's argument that the defendant waived his double jeopardy claim by failing to move for a mistrial despite being aware of the prosecutor's impropriety.[5] The state contends that a valid *Colton* claim arises only in two circumstances, neither of which fits the present case: (1) when the defendant, aware of the prosecutor's intent regarding his impropriety at trial, moves for a mistrial, or (2) when the defendant, unaware of the prosecutor's intent regarding his impropriety at trial, and after a reversal of the conviction on appeal because of the prosecutorial impropriety, moves to dismiss a subsequent prosecution and offers evidence in support of a

---

[5] Although the state's argument that we should overrule *Colton* appears similar to its argument that the defendant waived his claim under *Colton* because both that case and the present case involve a defendant's failure to move for a mistrial, they are distinct situations and are worth addressing distinctly. The state's request that we overturn *Colton* would require a defendant not only to move for a mistrial but to *prevail* on the motion to bar a new trial, whereas the state's contention that the defendant *waived* his *Colton* claim would not require that same success. Rather, the state would require that, for a defendant to avoid waiving his *Colton* claim, he need only move for a mistrial or, on remand after a reversal of the judgment based on the challenged conduct, move to dismiss a subsequent prosecution if additional evidence from outside the prior trial record is necessary to resolve the defendant's claim.

finding of that intent. The state asserts that, absent these two circumstances, the defendant waives his claim under *Colton.* In support, the state relies on a sentence in a footnote from *Colton* that reads: "Indeed, if a claim of prosecutorial [impropriety] is derived solely from the record, the defendant *may* waive his claim by his failure to raise it as a motion for [a] mistrial."[6] (Emphasis added.) *State* v. *Colton*, supra, 234 Conn. 699 n.16. We disagree with the state that the defendant waived his *Colton* claim.

We note first that we disagree with the defendant that the state has itself waived its waiver argument because, in its response to the defendant's motion to dismiss in the trial court, it "focused mainly on an argument that the [rules of practice] did not allow for the defendant's motion." The defendant contends that the state "should not be allowed to . . . [ambush] both the trial court and the defendant" after failing to raise its waiver argument when the trial court heard the parties' arguments regarding the defendant's *Colton* claim. But

[6] In support of this sentence in footnote 16 in *Colton*, this court quoted *State* v. *Tyler-Barcomb*, 197 Conn. 666, 500 A.2d 1324 (1985), cert. denied, 475 U.S. 1109, 106 S. Ct. 1518, 89 L. Ed. 2d 916 (1986), in which the court stated in relevant part: "[W]here counsel does not request a curative charge or seek a mistrial on the basis of alleged prosecutorial [impropriety], we have presumed that defense counsel did not view the remarks as so prejudicial that his client's right to a fair trial was seriously jeopardized. . . . As a result, we find that the defendants have waived their right to raise on appeal this claim of prosecutorial abuse." (Citations omitted; footnote omitted.) Id., 673–74. Since *Tyler–Barcomb*, but before *Colton*, we held in *State* v. *Williams*, 204 Conn. 523, 537, 529 A.2d 653 (1987), that a defendant's claim that a prosecutorial impropriety violated his constitutional right to a fair trial can be raised for the first time on appeal, to the extent that the record supports it. See, e.g., *State* v. *Stevenson*, 269 Conn. 563, 573, 849 A.2d 626 (2004). We have not been asked in the present case to decide whether footnote 16 remains, or ever was, an accurate statement of our law. Nor do we need to determine whether a defendant who successfully raises a prosecutorial impropriety claim for the first time on appeal is precluded from bringing a double jeopardy claim in a subsequent prosecution because that is not the factual circumstance with which we are presented.

the state's waiver argument hardly constitutes an ambush. It is premised on the rationale in *Colton*, the central case at issue in this appeal. Further, as the defendant concedes, "[t]he prosecutor during the motion hearing did discuss the significance of this court not dismissing the charges against the defendant," which underlies the state's argument that the defendant waived his *Colton* claim by failing to present new evidence. We will not leave the state's waiver argument unaddressed because the prosecutor failed to specifically use the term "waiver."

Even so, we reject the state's argument that the defendant has waived his double jeopardy claim because, in the present case, defense counsel undeniably believed that his client's right to a fair trial was "seriously jeopardized" in the manner this court contemplated in *Colton*. (Internal quotation marks omitted.) *State* v. *Colton*, supra, 234 Conn. 699 n.16. Specifically, when defense counsel moved for a new trial after the verdict, he argued "that the prosecutor had violated the defendant's constitutional rights pursuant to *Doyle* v. *Ohio*, supra, 426 U.S. 610 . . . ." *State* v. *Patrick M.*, supra, 344 Conn. 581. The fact that defense counsel moved for a new trial, rather than a mistrial, does not change the fact that his reason for doing so was because of a claimed constitutional violation by the prosecutor, and we will therefore afford the defendant the same opportunity for review of his *Colton* claim.

C

The final preliminary matter we must address before turning to the merits of this interlocutory appeal involves our standard of review of the trial court's denial of the defendant's double jeopardy claim. See, e.g., *State* v. *Cody M.*, 337 Conn. 92, 99, 259 A.3d 576 (2020) (" '[a] defendant's double jeopardy claim presents a question of law over which our review is plenary' "). It is appro-

priate to exercise plenary review rather than review the court's determination under the clearly erroneous standard because, critically, the trial court in the present case did not make any factual findings that would be subject to a more deferential standard of review. See, e.g., *State* v. *Lewis*, 273 Conn. 509, 516–17, 871 A.2d 986 (2005) ("[a]lthough we generally review a trial court's factual findings under the 'clearly erroneous' standard, when a trial court makes a decision based on pleadings and other documents, rather than on the live testimony of witnesses, we review its conclusions as questions of law"). Instead, years after the defendant's trial, a trial judge other than the judge who presided over the defendant's trial reviewed the trial transcripts and made the very same type of legal assessment that we now undertake in this opinion.

Although the parties agree on the applicable standard of review, we believe it is prudent to explain why plenary review is appropriate in this case because, in past decisions involving interlocutory challenges, both this court and the Appellate Court have applied an improper standard of review, inaccurately referring to the trial court's determination, based on an undisputed record, that the prosecutor's impropriety was intended to cause a mistrial as a factual finding rather than a legal determination. See, e.g., *State* v. *Butler*, supra, 262 Conn. 173; *State* v. *Payne*, 96 Conn. App. 488, 493–94, 901 A.2d 59, cert. denied, 280 Conn. 913, 908 A.2d 541 (2006). For example, in *Butler*, the parties did not present new evidence, such as live testimony, before the trial court, and the court therefore made no factual findings to determine the prosecutor's intent. See *State* v. *Butler*, supra, 174. As in the present case, the trial court's decision in *Butler* was based on proceedings that had occurred before a different judge several years prior. See id. Although it does not otherwise change the precedential value of *Butler*, considering that the trial court

in that case applied the correct legal standard; see id.; we clarify that we should have undertaken plenary review of that determination, rather than have applied the clearly erroneous standard. See id., 177; see also *Jones* v. *State*, 328 Conn. 84, 101, 177 A.3d 534 (2018) ("[W]hen the facts are undisputed, determining the legal import of those facts presents a question of law subject to de novo review. . . . This is so even in the context of fact laden disputes ordinarily subject to a trial court's discretion." (Citations omitted.)).

Unless the trial court conducts an additional hearing in which a party presents new evidence, in the form of testimony or other supporting material, from which the trial court then makes factual findings, its resulting decision is a legal one. This is true even if the trial court ruling on a defendant's double jeopardy claim also presided over that defendant's trial because the operative question is whether the double jeopardy claim involves supplemental fact-finding. In fact, in contrast to the trial court's decision in *Butler* and the present case, the trial court in *Colton* based its conclusion that the state was not barred from pursuing another prosecution of the defendant on the "extensive" double jeopardy record developed at a hearing on remand, including the presentation of live testimony. *State* v. *Colton*, Docket No. CR-6289646, 1998 WL 420705, *3 (Conn. Super. July 17, 1998). Although the defendant in *Colton* did not appeal from that ruling, if he had, the clearly erroneous standard of review would have applied to the court's factual findings.

II

Turning to the merits of the present case, we must determine whether the trial court correctly concluded that the prosecutor had not engaged in impropriety with the intent to provoke a mistrial to prevent an acquittal that he believed was likely to occur absent that impro-

priety. See, e.g., *State* v. *Colton*, supra, 234 Conn. 696. In *Colton*, we did not specify the precise circumstances in which a prosecutor engages in impropriety with the intent sufficient to bar a retrial because of the necessarily case-specific nature of these circumstances. Although we emphasize that a successful *Colton* claim still must depend on the unique facts of a given case, the ensuing discussion will, first, illuminate the outer limits of what constitutes a prosecutor's committing an impropriety with the intent to prevent what he perceives to be an imminent acquittal, and, second, clarify that, given the strict standard that a defendant must meet to demonstrate that intent, a defendant will, and should be able to, meet that standard only in rare circumstances.

Our case law following *Colton* is instructive on the circumstances that do not satisfy *Colton*'s intent standard. For example, in *State* v. *Butler*, supra, 262 Conn. 179, we upheld the trial court's determination that the prosecutor in that case did not commit impropriety with the intent that we described in *Colton*. The prosecutor had committed impropriety in that case when he stated in closing argument that "[t]he other thing [defense counsel] said to you . . . that [the witness for the state] has lied to other juries. Well, let me tell you, ladies and gentlemen, I wish I could tell you what other juries decided, but I am not allowed to." (Internal quotation marks omitted.) Id., 171. The Appellate Court reversed the defendant's conviction because of this impropriety and remanded the case for a new trial. See id., 172. On remand, the defendant moved to dismiss the charges on double jeopardy grounds, which the trial court denied. Id. In upholding that denial on appeal, we noted with approval that the trial court had articulated an alternative motivation that the prosecutor might have had in making the improper remarks, namely, to respond to defense counsel's comments regarding the state's witness. See id., 178–79.

In *Butler*, and in every appellate case in our state since *Colton*, a prosecutor's impropriety by itself was not enough for a trial court to infer that the prosecutor had acted with the necessary intent to bar a new trial. See, e.g., *State* v. *Michael J.*, supra, 274 Conn. 328–31, 342 (trial court considered manner of prosecutor's sensitive questions and victim's demeanor when responding in determining that prosecutor lacked intent to goad defendant into moving for mistrial after eliciting testimony from child sexual abuse victim about incidents of abuse that were not included in information or disclosed prior to trial); *State* v. *Ross*, 251 Conn. 579, 591, 742 A.2d 312 (1999) (claim that prosecutor engaged in impropriety thus barring further prosecution failed when defendant did not prove underlying violation of *Brady* v. *Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963)); *State* v. *Payne*, supra, 96 Conn. App. 492–94 (trial court considered "exceptionally strong case against the defendant" in determining that prosecutor did not have intent to prevent acquittal he believed at time was likely to occur in absence of impropriety because he would not have believed acquittal was imminent).

A review by this court has found minimal case law nationally, and none from our state, that demonstrates the type of circumstances that *would* bar a new trial based on *Colton*. This absence is logical, considering the difficulty of prevailing on a prosecutorial impropriety claim resulting in a reversal of the judgment in the first place and the high standard that we articulated in *Colton*. See *State* v. *Colton*, supra, 234 Conn. 700. The Court of Appeals of Wisconsin, however, encountered such a situation in *State* v. *Lettice*, supra, 221 Wis. 2d 69. That court inferred that a prosecutor had engaged in impropriety with the intent to prevent an acquittal that he believed to be imminent absent that impropriety. See id., 90. In that case, after the prosecutor failed

in his attempts to postpone the trial, he successfully brought false criminal charges against the defendant's attorney the night before trial. Id., 89–90. The court noted that the *sum* of the prosecutor's behavior with respect to the false criminal charges had demonstrated his intent to prevent an acquittal that he believed was imminent, observing that "[t]he egregious nature of [the prosecutor's] conduct was compounded by his speedy [posttrial] efforts to have the criminal charges dismissed against the defense attorney, which also support the conclusion that [the prosecutor's] purpose in filing the criminal charges was to avoid an acquittal." Id., 90. Although we do not mean to suggest that *Lettice* is the floor beneath which a *Colton* claim could never succeed, the facts in *Lettice* illustrate the rare occurrence when a court might conclude, objectively and based on the totality of the evidence before it, that a prosecutor's impropriety was specifically aimed at preventing what the prosecutor perceived to be an imminent acquittal. The inferences that the court in *Lettice* drew on the path to its conclusion do not require logical leaps to understand. On the contrary, the prosecutor's actions, on and off the record, added up to establish the particular intent that we described in *Colton*.

The circumstances described in *Oregon* v. *Kennedy*, supra, 456 U.S. 667, that would bar a retrial—a prosecutor's " 'goad[ing]' " defense counsel into moving for a mistrial—are also instructive, given that we adopted *Wallach*'s logic as a natural extension of *Kennedy*. See *State* v. *Colton*, supra, 234 Conn. 692, 696. For example, in *People* v. *Dawson*, 431 Mich. 234, 427 N.W.2d 886 (1988), the Michigan Supreme Court held that the prosecutor had goaded defense counsel into moving for a mistrial by asking the final rebuttal witness, "[c]an you tell us how many times [the defendant] offered you a blow job?" which the court noted that the prosecutor

"clearly knew was improper." (Internal quotation marks omitted.) Id., 259. The court explained that it inferred the prosecutor's intent based on the declining strength of the state's case, his attempt to stall the proceedings in "hop[es] that the court would declare a recess and thereby enable [him] to marshal his forces over the weekend," and his lack of surprise or argument when the defendant moved for a mistrial. See id. When asked by the trial judge whether he had any response to the motion, the prosecutor replied, "[n]ope." (Internal quotation marks omitted.) Id. As in *Lettice*, the reasonable inferences the Michigan Supreme Court drew in *Dawson* regarding the prosecutor's intent align with those described in *Colton*. Those inferences also notably arose from circumstances other than merely the impropriety itself—the declining strength of the state's case and the prosecutor's lack of advocacy in response to the motion for a mistrial—similar to the case law of our state that has consistently held that impropriety on its own is insufficient to establish a successful *Colton* claim.

Although we agree with the defendant that surviving a sufficiency of the evidence challenge does not preclude a determination that a prosecutor intended to prevent an acquittal, it is one piece of information that courts can assess when considering whether the prosecutor committed an impropriety with the intent to prevent an acquittal that he believed was imminent. If the evidence at trial strongly favored the defendant, that is one consideration that could lead a trial court to determine that a prosecutor's improper remarks were intended to prevent an acquittal. On the other hand, when the evidence is more equivocal, as it often is, that implication does not carry the same weight. Or, if the evidence was equivocal, but additional evidence on or off the record suggests a prosecutor's improper motive, such as that described in *State* v. *Lettice*, supra, 221

Wis. 2d 89–90, or *State* v. *Dawson*, supra, 431 Mich. 259, sufficient information might exist for a trial court to infer the necessary intent on the part of the prosecutor. The main point, however, is that the argument that a defendant presents to a trial court to demonstrate a prosecutor's specific intent to prevent an acquittal must not arise from strict conjecture. Instead, it must derive, as it did in *Lettice* and *Dawson*, from reasonable inferences that flow from the context of the relevant proceedings.

Considering this precedent, we conclude that the trial court in the present case correctly determined that the defendant had failed to establish that the prosecutor intended to prevent an acquittal that the prosecutor perceived to be imminent. On remand, the defendant presented no additional evidence related to the prosecutor's intent, leaving the trial court to make its determination based on the trial transcripts and this court's previous decision, including our conclusion that the evidence at the defendant's trial was sufficient for a conviction. See *State* v. *Patrick M.*, supra, 344 Conn. 569, 578. We have undertaken the same review and have arrived at the same conclusion as the trial court.[7]

The state's case, although not ironclad, was hardly on the downward slope that the Michigan Supreme Court described in *State* v. *Dawson*, supra, 431 Mich. 259. The defendant's suggestion that the prosecutor had committed impropriety with the intent discussed in *Colton* because he was so shaken by the strength of the defendant's case is therefore unavailing. Although perhaps persuasive to the jury in some regards, the defendant's testimony did not shift the case in the dra-

---

[7] It is worth noting that our failure to specify whether the prosecutor in *State* v. *Patrick M.*, supra, 344 Conn. 565, had the intentional mindset discussed in *Colton* was not an indication that this court believed that the prosecutor did not have that intent, as the state suggests. Rather, it was because the issue was not before this court.

matic manner he suggests. During cross-examination, the prosecutor highlighted various holes in the defendant's account of events, diminishing the likelihood that the prosecutor believed that the jury would accept the entirety of the defendant's testimony as indisputable. For example, he questioned why the defendant, who had said that he fled to New York after he came home and saw his wife dead because he believed his home had been burglarized, had never previously fled his home in the same manner, although it had been burglarized on multiple occasions in the past. The prosecutor also pointed out that the defendant in the past had committed several other felonies—including one committed just fifteen days before the incident in the present case—but that none of those felonies had led him to flee to another state or to take his family with him while doing so. The prosecutor similarly asked the defendant to explain why Thomas had instructed him to take the license plates off the car he was driving to New York, to which the defendant responded that he did not know. The defendant also testified that he did not see or speak with Watson earlier on the day of the victim's death, although Watson previously had testified to the opposite.

During closing arguments, the prosecutor asked the jury to consider the defendant's motive to kill the victim and to pay close attention to the evidence of that motive, as well as evidence discrediting the defendant's account of events. Specifically, he argued that "[t]his isn't a case about the police. This is a case about this defendant [being] upset that his wife preferred a woman to him, upset that the marriage was falling apart, and you're going to see that in . . . the text messages that he sent. . . . He's the person who had the motive; he's the person who had access to the house. And, if you're going to believe that this was some sort of robbery to get money and drugs, look at the photos that are in evi-

dence. They left an awful lot of drugs, and they left a pretty large quantity of money."

This cross-examination and closing argument, even alongside the improper remarks the prosecutor had made, do not on their face paint the picture of a prosecutor who is purposely engaging in impropriety to goad the defendant into moving for a mistrial because the prosecutor believed that, absent that extreme step, the jury would find the defendant not guilty. Instead, assessed objectively, they depict a prosecutor's attempting to secure a conviction of the defendant, precisely the sort of motivation that we held would not prevent a retrial of a defendant based on double jeopardy principles in *State* v. *Butler*, supra, 262 Conn. 174. The fact that part of that attempt to secure a conviction included repeated, improper suggestions that the defendant had a duty to assist the police investigation rather than exercise his *Miranda* right to remain silent, impropriety that was prejudicial enough for this court to reverse the defendant's conviction, does not suffice to establish the prosecutor's intent to prevent an acquittal that he believed was imminent without the impropriety. If we were to agree with the defendant that this prosecutor's impropriety sufficed to support a finding of the intent we contemplated in *Colton*, we would be making an unwarranted and speculative leap of logic that would expand the *Kennedy* exception far beyond the bounds described in *Wallach*—hardly a reasonable inference based on the evidence before us. We reject the defendant's invitation to take that leap.

When we adopted the logic of *Wallach* in *Colton*, we expressly stated that a successful claim of this sort "would arise only rarely." *State* v. *Colton*, supra, 234 Conn. 699. Because we will not, and trial courts should not, presume a prosecutor's ill intentions without sufficient supporting evidence, we still believe that to be true. There is no question that the record in the present

case does not contain sufficient evidence to bar a new trial.

The trial court's denial of the defendant's motion to dismiss is affirmed.

In this opinion the other justices concurred.